769 P.2d 732

**Diana L. CUMMING, Plaintiff–Appellant and Cross–Appellee,**

v.

**NIELSON'S, INC. and Warren Louis Snyder, Defendants–Appellees and Cross–Appellants.**

**No. 9627.**

Court of Appeals of New Mexico.

Oct. 18, 1988.

Certiorari Denied Dec. 28, 1988.

Robert Dale Morrison, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for plaintiff-appellant and cross-appellee.

Lawrence H. Hill, Paul L. Civerolo, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendant-appellee and cross-appellant Nielson's, Inc.

Warren Louis Snyder, Taos, pro se.

## OPINION

BIVINS, Judge.

Plaintiff sued for personal injury and property damage resulting from a vehicular accident that occurred when an oncoming automobile driven by Warren Louis Snyder (Snyder) struck her vehicle head-on. In addition to Snyder, plaintiff also named as defendants, Holiday Inns, Inc., Grand Taos, Ltd., Taos Associates, Inc. (dramshop defendants), the New Mexico State Highway Department (State Highway Department) and Nielson's, Inc. (Nielson's).

At the close of plaintiff's case, the trial court directed a verdict in favor of the State Highway Department and Nielson's. The jury returned a verdict in favor of the dramshop defendants and against Snyder. Plaintiff appeals from the judgment entered on the jury's verdicts and the trial court's directed verdicts. After filing her notice of appeal, plaintiff settled with the State Highway Department and it is no longer a party to this action. Pending appeal, plaintiff and the dramshop defendants settled, thereby eliminating those parties. Consequently, the only issues remaining are those which relate to Nielson's and Snyder.

Plaintiff's appeal challenges: (1) the directed verdict in favor of Nielson's; and (2) certain evidentiary rulings made by the trial court. Although the parties' stipulation for dismissal of the dramshop defendants recites that all issues as between plaintiff and defendants Nielson's and Snyder remain, only one evidentiary ruling, the exclusion of evidence of future medical treatment, appears to affect Snyder. Because we affirm the trial court on that

issue, we affirm the judgment against Snyder. We reverse the directed verdict for Nielson's and remand for retrial as to that defendant. Since retrial is required, we answer the challenges as to those evidentiary rulings that are likely to reoccur. Because we reverse, we do not reach Nielson's cross-appeal on the issue of costs awarded it.

On the night of June 29, 1984, plaintiff was traveling north on New Mexico State Highway 68 in Taos County. The accident occurred when Snyder's vehicle, which was traveling south, crossed the center of the highway, struck the left side of a vehicle traveling north in front of plaintiff's vehicle, and then struck plaintiff's vehicle head-on. Snyder was intoxicated at the time of the accident. Plaintiff alleged that just prior to the accident, Snyder had been drinking at the Holiday Inn Bar in Taos.

The highway where the accident occurred was under construction at the time of the accident pursuant to a contract between the State Highway Department and Nielson's, the general contractor for the highway construction. At the time of the accident there was an excavation, for the purpose of extending an existing culvert, that began approximately one foot from the east edge of the highway and reached a depth of approximately ten feet. The accident occurred approximately 120 feet north of this excavation.

## 1. DIRECTED VERDICT FOR NIELSON'S

Plaintiff claims the trial court's announced reasons for directing a verdict in favor of Nielson's constituted reversible error. Those reasons were: (a) plaintiff failed to produce expert testimony that the hazard created by the excavation violated any standard imposed on the contracting industry; (b) no proof that lack of striping had any effect on Snyder; and (c) lack of signs or warnings as to the location of excavation had no bearing on plaintiff's actions because she abandoned any thought of leaving the roadway. We discuss each of these bases.

### (a) *Failure to Produce Expert Testimony*

■ Because of the apparent confusion of the parties as to the duty of a roadway construction contractor to the traveling public, and the bearing this duty has on the need for expert testimony, we first address the question of duty. Nielson's relies on cases such as *Terry v. New Mexico State Highway Comm'n*, 98 N.M. 119, 645 P.2d 1375 (1982); *Baker v. Fryar*, 77 N.M. 257, 421 P.2d 784 (1966); and *Tipton v. Clower*, 67 N.M. 388, 356 P.2d 46 (1960), which deal with the liability of contractors after completion and acceptance of the work. One of the exceptions to liability is when the independent contractor merely carefully carried out the plans, specifications and directions given him, at least where those plans are not so obviously dangerous that no reasonable man would follow them. With that as the starting point, the parties proceed to argue their respective positions as to the need for expert testimony to prove breach of duty.

■ Of course, if the nature of the duty is misunderstood, then the manner of proving breach of duty may become unclear. That appears to have happened here. The problem may be due in part to the lack of cases announcing the duty of a roadway contractor to the traveling public during construction, as contrasted with the several cases describing the duty of contractors generally following completion and acceptance of the work. *But see* dissenting opinion of Justice Noble in *Martinez v. C.R. Davis Contracting Co.*, 73 N.M. 474, 477–478, 389 P.2d 597, 599 (1964) (stating that "[a]n independent contractor in charge of a road or street under repair is charged with the duty of making adequate provision for the safety of the traveling public, but is not held to an insurer's liability[.]"). We believe this correctly states the law.

■ Highway contractors have a duty at common law to take adequate measures to protect the safety of the traveling public, which includes the duty to protect the public from dangerous conditions within the construction zone. *See Cummins v. Rachner*, 257 N.W.2d 808 (Minn.1977); *Fergu-*

*son v. Benson*, 309 Minn. 160, 244 N.W.2d 116, 3 A.L.R. 4th 761 (1976). This may include the duty to protect the public from snares, traps, and pitfalls by erecting appropriate warning signs, as well as the duty to adequately mark highway detours they have constructed and to warn of excavations they have created or exposed. *Id.; Mora v. State*, 68 Ill.2d 223, 12 Ill.Dec. 161, 369 N.E.2d 868 (1977); *Smith v. Lafortune*, 288 Minn. 135, 179 N.W.2d 136 (1970); *see also Cohen v. Sahuaro Petroleum & Asphalt Co.*, 17 Ariz.App. 215, 496 P.2d 641 (1972); *Thirion v. Fredrickson & Watson Constr. Co.*, 193 Cal.App.2d 299, 14 Cal.Rptr. 269 (1961).

■ Implicit in the trial court's ruling is the requirement that breach of duty must be shown by violation of an industry standard. While violation of an industry standard may provide proof of breach of duty, the reverse is not necessarily true. In *Walker v. L.G. Everist, Inc.*, 102 N.M. 783, 701 P.2d 382 (Ct.App.1985), we said:

> [A]dherence to an industry standard is not necessarily conclusive as to the issue of negligence and does not itself relieve a defendant engaged in that particular industry from liability. The defendant must still use reasonable care under all circumstances, and if prevailing practices in industry do not comport to that standard, the defendant may be found negligent notwithstanding compliance with industry custom.

*Id.* at 788, 701 P.2d at 387. In *McKenzie v. Cost Bros., Inc.*, 487 Pa. 303, 409 A.2d 362 (1979), the supreme court of Pennsylvania quoted Justice Oliver Wendell Holmes, who said: " 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.' " *Id.*, 487 Pa. at 307, 409 A.2d at 366 (quoting *Hemrock v. Peoples Natural Gas Co.*, 423 Pa. 259, 269, 223 A.2d 687, 692 (1966)).

■ We now turn to the question before us—is expert testimony required to prove breach of duty? While expert testimony may be useful, we hold that, absent special circumstances not present here, it general-ly is not required. Here again, the starting point used by the parties has led them astray.

Plaintiff, relying on *Toppino v. Herhahn*, 100 N.M. 564, 673 P.2d 1297 (1983), argues that an exception to the general rule requiring expert testimony to prove negligence exists if the negligence can be determined by resort to common knowledge ordinarily possessed by an average person. *Toppino* was a medical malpractice action and, as that case holds, expert testimony ordinarily is essential to support an action against a physician or surgeon. *See also* SCRA 1986, 13–1101. We believe the reverse applies to contractor liability cases; that is, the requirement for expert testimony to establish breach of duty is the exception rather than the rule.

In *Lawrence County Bank v. Riddle*, 621 S.W.2d 735 (Tenn.1981), the supreme court of Tennessee had occasion to consider a holding by that state's intermediate court that the rule employed in medical malpractice cases requiring expert testimony should be equally applicable in construction cases because the standard of care involves specialized skill or knowledge beyond the ken of ordinary laymen. In rejecting that approach, the high court said:

> The analogy to medical malpractice cases is inappropriate. The inner workings of the human body, surgical procedures, proper diagnostic techniques, and other medical activities are not within the knowledge of average ordinary laymen. The medical terminology employed by doctors is strange and foreign indeed to the average juror, attorney, or judge.
>
> Unlike the medical malpractice field, the digging of an open trench and the consequences of leaving it open for several days is a matter within the knowledge and understanding of ordinary laymen.

*Id.* at 737.

We agree and hold that in ordinary construction cases, as the one before us, it is not necessary to present expert testimony in order to establish breach of duty. *Cf. Lewis v. Rodriguez*, 107 N.M. 430, 759 P.2d 1012 (Ct.App.1988) (suggesting in dicta

need for expert testimony where procedure not common knowledge to average juror). Most people drive vehicles and are familiar with roadways. We have considered cases relied on by Nielson's and find them unpersuasive.

■ From a review of the record, we believe plaintiff offered sufficient evidence that reasonable minds could differ as to whether Nielson's breached its duty of care. The adequacy of the actions taken by a contractor to satisfy its duty toward the traveling public is generally a question for the trier of fact. *Cohen v. Sahuaro Petroleum & Asphalt Co.*

### (b) *Lack of Striping*

A second basis for directing a verdict for Nielson's involved plaintiff's claim that lack of center striping contributed to the accident. The plans and specifications made it optional whether Nielson's should place striping and pavement markings along the highway. Of course, such an optional provision would not preclude a finding of negligence if the jury could find striping a reasonably necessary safety device. That is not the problem here.

We do not understand the trial court's ruling with respect to striping as requiring expert testimony, as plaintiff argues. It would appear the trial court determined that reasonable minds could not differ as to the effect of the lack of striping on this particular accident. If the trial court was correct, then that ruling must be sustained.

Snyder said he could not recall anything after leaving the Holiday Inn parking lot until after the accident. That he was intoxicated is undisputed. Sylvia Nichols–Boeck, the driver of the van in front of plaintiff, said Snyder appeared to be unconscious when his vehicle crossed her line of vision.

The only evidence offered by plaintiff that suggests the need for striping came through Michael Kinney, an accident reconstructionist. Kinney explained that, in the transportation industry, "[p]ositive guidance means giving the driver enough information in a form that he needs it, when [he] needs it and in a form that [he] can understand." Kinney said markings on the roadways, delineators, signs and signals are some of the devices that give drivers positive guidance. Plaintiff's counsel asked Kinney if he determined what effect, if any, the lack of positive guidance may have had on any particular driver in the accident. The witness said the lack of positive guidance took the form of "lane markings, centerline, edgelines and things of that nature" and that was a contributory factor to the accident. He added that considering the narrowness of the roadway, the high traffic count, the speeds and lack of markings, the probability for a head-on or side-swipe accident was "very high."

Kinney did not, however, state an opinion that Snyder's actions were influenced by the lack of positive guidance. In fact, as the trial court noted, he was not asked the question. On cross-examination, Kinney agreed that a driver can reach such a state of intoxication that no amount of positive guidance will be useful to him. While the trial court's ruling that the lack of striping was irrelevant as to Snyder appears correct, it overlooks Kinney's opinion that the lack of positive guidance did affect plaintiff and Nichols–Boeck, insofar "as it relates to what was present off on the side of the road to their right." He said both had driven this stretch and were accustomed to seeing the area around the concrete box culvert and the excavation taking place around it. At this point, plaintiff's counsel failed to ask the witness to explain how the lack of center or edge striping contributed to the accident. He went off on another subject. We believe, however, given plaintiff's testimony, a reasonable inference can be drawn so as to make this evidence relevant.

■ Plaintiff testified that, as she was proceeding north late at night, she observed a vehicle in front of her and what she thought were lights of an oncoming vehicle "coming towards us" (meaning in her lane). She had a "gut instinct" to lie on the floorboard and to "roll it" (get off the road), something her father had taught her. She knew there was some kind of

drop or hole on the east side of the roadway, from having traveled that highway, but she did not know where it was. "I looked to the side of the road and I couldn't tell where I was." She then looked at her floorboard and was not sure she could lie down there; "there was stuff on the floorboard." Plaintiff then looked up, did not see the headlights, and "I just kind of went 'whew, thank God.'" The oncoming lights reappeared; the oncoming vehicle struck the van in front of plaintiff and then her vehicle head-on. Plaintiff testified that if signs had been present to warn her of the drop, she thought she could have ditched her vehicle and avoided the accident. To her, going into the hole would have been worse.

We believe a jury could infer from this testimony and the testimony of Kinney that striping on the roadway could have provided plaintiff positive guidance that might have assisted her in making a judgment concerning whether to leave the roadway so as to avoid the accident. For example, a centerline stripe could have aided plaintiff in knowing better whether the oncoming vehicle was in plaintiff's lane of traffic. Also, striping on the edge of the roadway arguably could have aided plaintiff in locating the hole.

We believe reasonable minds could differ as to whether lack of striping contributed to plaintiff's injuries.

#### (c) *Lack of Signs*

■ Similarly, we believe reasonable minds could differ as to whether the lack of warning signs contributed to the accident and resulting injuries. The trial court apparently felt that since plaintiff abandoned the option of leaving the roadway because she could not lie down on the floorboard, did not know where the hole was, and subsequently saw the headlights disappear, signs were no longer a factor in the case.

Considering plaintiff's testimony in a light most favorable to her claim, we think a jury could find she was deprived of an option that might have prevented her injuries. Plaintiff knew from traveling this road there was a hole; she just did not know where it was located. There was

evidence that no warning devices, such as high intensity flashing beacons, alerted motorists as to where the hole was. Plaintiff said she feared driving into that hole because of the obvious damage that would have occurred. Thus, it is not a question of the danger of the oncoming vehicle supplanting the choice of evasive action; rather, it is the loss of the option before the apparent reprieve, due to lack of information as to a possibly more hazardous danger, the hole. A fine distinction, we admit, but nevertheless a distinction, and one for the jury to assess.

#### (d) *Conclusion*

The last two subissues, lack of striping and lack of signs, actually go to causation. The issue of proximate cause should be removed from the fact finder only when the facts are undisputed and all reasonable inferences are plain, consistent and uncontradictory. *Cross v. City of Clovis*, 107 N.M. 251, 755 P.2d 589 (1988). Here, we are unable to say those criteria have been met. If reasonable minds may differ as to the conclusion to be reached under the evidence or permissible inferences to be drawn therefrom, the question is one for the jury and it was error to direct a verdict. *Smith v. Loos*, 78 N.M. 339, 431 P.2d 72 (Ct.App.1967). In ruling on a motion for a directed verdict, the trial court must view the evidence, together with all reasonable inferences deducible therefrom, in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. *Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974). The reviewing court must do the same. *Id.*

Applying these standards, we reverse the directed verdict in favor of Nielson's and remand for retrial against that defendant.

#### 2. CLAIMED ERRONEOUS EVIDENTIARY RULINGS

We review the admission and exclusion of evidence under an abuse of discretion standard. *See Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (Ct.App.1970). In addition, the complaining party on appeal must

show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal. *See* SCRA 1986, 11–103(A); *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977).

### (a) *Exclusion of Lay Opinions as to Cause of Accident and Exclusion of Prior Accident*

■ The trial court refused to allow Nichols–Boeck to express an opinion as to the cause of the accident. Plaintiff also sought to elicit from James Hightower, an employee of Nielson's, testimony regarding a prior accident near the scene of her accident for the purpose of establishing notice to Nielson's of the dangerous condition of the highway. We find that plaintiff has waived these issues because she failed to make an offer of proof on them. *See* R. 11–103(A)(2); *Williams v. Yellow Checker Cab Co.*, 77 N.M. 747, 427 P.2d 261 (1967).

### (b) *Refusal to Allow Expert to Answer Hypothetical Question*

■ Plaintiff tried to ask Manning a hypothetical question in which she described the conditions around the hole on the east side of the road around the concrete box culvert, and then asked whether he considered these conditions a hazard. Nielson's objected on the ground the question assumed facts not in evidence, which objection the trial court sustained. Nielson's seems to take the position that the trial court's ruling was correct either because Manning had already testified that the hole was not considered a hazard or because the question assumed facts not in evidence.

It is difficult to determine exactly what facts contained in the question Nielson's claims were not in evidence. Our review of the transcript reveals that plaintiff presented evidence tending to show the hole was as plaintiff described it in the hypothetical question. We can only conclude the basis of Nielson's objection to the question was that plaintiff asked Manning to assume the hole constituted a hazard. If this is the basis of Nielson's objection to the question, we do not find it convincing because plain-

tiff did not ask Manning to assume the hole constituted a hazard. We conclude that plaintiff should be allowed to ask the question on retrial.

### (c) *Refusal to Admit Photographs of Subsequent Remedial Action*

Plaintiff sought to introduce photographs showing the condition of the highway three weeks after the accident, claiming they were admissible under the "feasibility of precautionary measures" exception to SCRA 1986, 11–407, and that they were relevant for impeachment purposes.

■ Generally, evidence of subsequent remedial measures is inadmissible to prove negligence. *See* R. 11–407. Plaintiff claims the evidence was admissible because it showed that Nielson's completed the project "in the manner planned." We fail to see what relevance this has to any of the issues in the case, and specifically the condition of the highway on the night of the accident.

■ Next, plaintiff claims the evidence falls under the "feasibility of precautionary measures" exception to Rule 11–407. She submitted a memorandum brief to the trial court setting out her position in this regard, which we have reviewed. The cases relied on by plaintiff in her memorandum brief and Rule 11–407 basically stand for the proposition that subsequent remedial measures are admissible to show the feasibility of precautionary measures where the party against whom the evidence is offered denies precautionary measures were feasible. Nielson's never denied that precautionary measures were feasible. On the contrary, Nielson's maintained throughout the proceedings that it, at all times, complied with the plans and specifications for the project. Therefore, the evidence does not fall under the "feasibility of precautionary measures" exception to Rule 11–407.

■ Finally, plaintiff claims the evidence was relevant to impeach the testimony of Nielson's witnesses regarding the condition around the concrete box culvert on the night of the accident. Again, we do

not see how the evidence as to the condition of the highway three weeks after the accident would be relevant for this purpose. Even assuming the evidence would be so relevant, it was cumulative. *See* SCRA 1986, 11–403. Plaintiff was able to get into evidence numerous photographs showing the condition of the highway at various times prior to the accident, which supported her factual theory that Nielson's was not in compliance with the plans and specifications. The trial court did not abuse its discretion in refusing to admit the photographs taken three weeks after the accident. *See Wright v. Brem.*

(d) *Exclusion of Evidence of Future Medical Treatment*

■■■ Plaintiff tried to introduce through Dr. Weiner evidence of future medical treatment to her left leg, which she injured in the accident. Dr. Weiner testified he could not state with any medical probability whether the left leg would heal or whether she may require surgery if the leg did not heal.

Evidence as to future medical treatment must be to a medical probability. *See Regenold v. Rutherford,* 101 N.M. 165, 679 P.2d 833 (Ct.App.1984). Dr. Weiner's testimony does not meet this standard. First, he could not state to a medical probability whether plaintiff's leg would heal. Second, even if the leg did not heal, he could only state that plaintiff may require surgery. This testimony is basically the same as "plaintiff may require an operation," which is insufficient to support an award of costs

for that operation. *See Michael v. West,* 76 N.M. 118, 412 P.2d 549 (1966). Therefore, the trial court did not abuse its discretion in excluding this evidence.

(e) *Exclusion of Evidence Regarding Existence of a Hazard*

We cannot tell from plaintiff's brief exactly what her complaint is under this issue. However, we believe our resolution of the first issue renders this issue moot. Therefore, we have not considered it.

## NIELSON'S CROSS–APPEAL

In view of our disposition of the first issue, we reverse the trial court's award of costs to Nielson's because it is no longer a prevailing party. *See* SCRA 1986, 1–054(E).

## CONCLUSION

In conclusion, we reverse the trial court's directed verdict in favor of Nielson's and remand for a new trial as to Nielson's consistent with this opinion. We reverse the trial court's order awarding Nielson's ten dollars in costs. We affirm the judgment in favor of plaintiff against Snyder.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.