This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ASIF SHARFI,**

    Plaintiff-Appellee,

v.                                                    NO.   30,034

**DANIEL T. SERRANO, an individual,**
**and GREAT WESTERN HOTELS, LLC,**
**a New Mexico Limited Liability Company,**

    Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Ira Robinson
Albuquerque, NM

Kate Fitz Gibbon
Santa Fe, NM

for Appellee

Robles, Rael & Anaya, P.C.
Daniel J. Macke
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Daniel Serrano (Defendant) and his company, Great Western Hotels, LLC, appeal the district court's decision granting compensatory and punitive damages to Asif Sharfi (Plaintiff) for breach of an employment contract that the two entered into in 2004. Defendant contends that the district court abused its discretion in admitting testimony from two character witnesses without proper foundation. Defendant also argues that the district court erred in awarding punitive damages for breach of contract. We affirm the district court on all grounds.

**I.    BACKGROUND**

In 2004, Defendant became interested in purchasing the University Airport Inn. While Defendant and Great Western were attempting to secure financing for the purchase of the Inn, Defendant was given charge of the Inn's business for the period of "due diligence" to oversee and evaluate the Inn's overall operation. Conditional on the financing, Defendant would finalize the purchase and take over as the permanent owner. Around March 22, 2004, Defendant agreed to employ Plaintiff as the general manager of the Inn during a period of due diligence, which would last approximately sixty to ninety days. Defendant agreed to pay Plaintiff $1,500 per

week. Plaintiff began work on March 26, 2004. Plaintiff remained employed at the Inn until June 15, 2004, in accordance with the contract.

During his employment, Plaintiff received approximately twenty nights of complimentary lodging, food, and dry cleaning. Nonetheless, Defendant failed to pay Plaintiff for any of his work, which he claims amounted to $17,548. Defendant ultimately failed to secure financing and relinquished control of the Inn in mid-June 2004. Plaintiff was assured by Defendant that he would be paid on multiple occasions between 2004 and 2006, but Defendant refused to actually do so. Plaintiff subsequently brought suit for breach of contract and was awarded compensatory and punitive damages by the district court. At trial, Defendant objected to the admission of character evidence and to the district court's award of punitive damages. Defendant now appeals.

**II.    STANDARD OF REVIEW**

"With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the

facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that [is] premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (second alteration in original) (internal quotation marks and citation omitted). "The question [of whether a district court's findings are supported by substantial evidence] is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. When reasons both supporting and detracting from a decision exist, there is no abuse of discretion. *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993).

If the evidence was admitted in error, "the complaining party on appeal must show the erroneous admission . . . of evidence was prejudicial in order to obtain a reversal." *Cumming v. Nielson's, Inc.*, 108 N.M. 198, 203-04, 769 P.2d 732, 737-38 (Ct. App. 1988). This burden includes having to show a "high probability that the improper evidence may have influenced the factfinder[.]" *Santa Fe Custom Shutters*

*& Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 32, 137 N.M. 524, 113 P.3d 347 (internal quotation marks and citation omitted).

**III.   DISCUSSION**

**A.   The Character Evidence Was Properly Admitted**

Defendant argues that the admission of testimony from two character witnesses was an abuse of discretion because their testimony lacked foundation. "Pursuant to [Rule] 11-608(A) [NMRA], the credibility of a witness may be attacked by evidence in the form of an opinion or as to reputation, but only as it relates to the witness's character for truthfulness or untruthfulness and only after a proper foundation is laid." *Constr. Contracting & Mgmt., Inc. v. McConnell*, 112 N.M. 371, 376, 815 P.2d 1161, 1166 (1991). Foundation for opinion evidence is "based upon [the testifying witness's] own repeated dealings with [the person being impeached] and his impressions from other people[.]" *Id.* In contrast, to provide foundation for reputation evidence, the offering party must establish "the factual context that gives rise to a witness's claimed ability to describe accurately another witness's reputation in the community." *Id.* This may involve eliciting testimony to show "how long he had lived in the community or whether he was familiar with [the defendant's] reputation for truth and veracity." *Id.*

In this case, Michael Gallegos testified to Defendant's reputation in the community for untruthfulness. At trial, Plaintiff's direct examination of Gallegos established that he knew Defendant from his involvement in local politics and that he was "friends" with Defendant. Gallegos testified that he had held several different political or governmental positions while working under a former county commissioner and city councilman as a member of the state gaming board and under a district court judge. Gallegos explained that he routinely held "democratic breakfasts" at a local restaurant, which were attended by local politicians. At these breakfasts, Gallegos met Defendant around the time Defendant was running for city council and introduced him to various local political figures, including members of the state central committee. Gallegos stated that he was "kind of always interested in [Defendant's] political career." Gallegos testified that even after Defendant lost the city council election, he invited Defendant over to his house and encouraged him to run for city council again. Finally, Gallegos testified that he was familiar with Defendant's reputation for "untruthfulness" and that "he's been untruthful about a few things."

We conclude that Plaintiff sufficiently laid a foundation for Gallegos's reputation testimony. Through direct examination, Plaintiff established that Gallegos knew Defendant from local politics, in which Gallegos and Defendant were both

6

active members. Gallegos hosted events in the political community, which Defendant attended, along with other members of the Democratic Party. Gallegos was interested in Defendant's political career and even encouraged him when he failed to win the city council election. From this evidence, it appears evident that Gallegos knew Defendant and was exposed to the others' opinions about Defendant in the political arena. Plaintiff therefore provided the factual context that gave rise to Gallegos's claimed ability to accurately describe Defendant's reputation in the community.

In addition, Ray Barrera testified to both his opinion of Defendant's character for untruthfulness, and his reputation in the community for untruthfulness. Barrera testified that he developed hotels and casinos and, at the time of questioning, had about six years experience in the business. Barrera stated he was familiar with Albuquerque's hotel industry with regard to development and construction. Barrera testified that he worked and has bid on projects in Albuquerque's hotel industry, the same industry in which Defendant has worked. It was within this industry that Barrera was introduced to Defendant in 2004. Barrera explained that Defendant "was asked to be part of the development team on a proposal [he and others were] putting together for the Isleta Pueblo." Barrera confirmed that he knew Defendant's reputation with regard to truth and veracity in the Albuquerque hotel industry and that it was "[v]ery

poor." Barrera also stated that, in his personal opinion, Defendant was "[j]ust a big liar."

We reason that this information also provides sufficient foundation for admission of the character testimony. Plaintiff established that Barrera was involved in Albuquerque's hotel industry for the preceding six years, to which Defendant was also a member. And Barrera stated that he knew Defendant's reputation for truth and veracity within that community. At one time, Barrera had a working relationship with Defendant and had known him during the five years prior to trial. Based on this information, Barrera could know and testify to Defendant's reputation in the hotel industry and his own personal opinion about Defendant.

Defendant argues that neither community in which the witnesses had contact with him was sufficient to establish foundation for character testimony. We disagree. Our case law does not require that the witnesses be part of a particular community. Foundation for reputation testimony only requires that the witness have sufficient involvement in a community, such that he or she could make an evaluation of Defendant's reputation within the community. *McConnell*, 112 N.M. at 376, 815 P.2d at 1166. As we stated above, this standard was satisfied.

To the extent that Defendant argues that the witnesses "gleaned [their impressions of Defendant] from newspaper and television reports[,]" we disagree.

8

Both witnesses had personal dealings with Defendant and participated in the same political or business communities as Defendant. Gallegos explained that he was Defendant's friend and interacted with Defendant on both the political and personal level. Barrera also testified on cross- examination that he knew Defendant within the hotel industry—meeting with Defendant in regard to a construction bid for the Isleta Pueblo and, subsequently, working closely and personally with Defendant on a bid for the construction of a hotel casino at the Sandia Pueblo. The two met together on several occasions and worked on details for the Sandia proposal. But, shortly thereafter, Barrera discovered Defendant had been secretly constructing a bid of his own with another team. Barrera stated that Defendant "literally took the model that we had put together, stole it, put the same model with the other team[,] and bid against us. I think that's a pretty big lie." We conclude that both witnesses' testimony was founded upon their respective personal dealings with Defendant and impressions from other people in the community.

Therefore, the opinion testimony was supported by sufficient foundation. We conclude that the district court did not abuse its discretion in admitting the impeachment evidence.

**B.    The District Court Did Not Abuse Its Discretion in Awarding Punitive Damages**

Defendant argues that the district court erred in awarding punitive damages because they may not be awarded for breach of contract. In the alternative, Defendant contends that, even if punitive damages may be awarded for breach of contract, the district court abused its discretion by awarding them in this case. In New Mexico, it is well settled that punitive damages may be awarded for breach of contract. *Bogle v. Summit Inv. Co., LLC*, 2005-NMCA-024, ¶ 28, 137 N.M. 80, 107 P.3d 520; *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 210, 880 P.2d 300, 307 (1994); *McConnell*, 112 N.M. at 376, 815 P.2d at 1166; *Romero v. Mervyn's*, 109 N.M. 249, 255-256, 784 P.2d 992, 998-999 (1989). A court can award punitive damages for breach of contract where a defendant has a culpable mental state demonstrated by some "form of overreaching, malicious, or wanton conduct." *McConnell*, 112 N.M. at 375, 815 P.2d at 1165. Culpable conduct may also be characterized by a "recklessness" that violates covenants of fair dealing. *See Paiz*, 118 N.M. at 211, 880 P.2d at 308 (noting that "[a] mental state sufficient to support an award of punitive damages will exist when the defendant acts with 'reckless disregard' for the rights of the plaintiff"); *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 706, 858 P.2d 66, 82 (1993) (stating that there exists a "duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract"). A reckless or

10

wanton disregard for the rights of another party will justify punitive damages. *See Bogle*, 2005-NMCA-024, ¶ 28.

We conclude that punitive damages can be awarded for breach of contract. Thus, the issue is whether Defendant's conduct was sufficient to support a punitive damages award. We reason that it is.

In this case, testimony indicated that Defendant entered into a contract with Plaintiff, promising to pay him $1,500 per week. Evidence showed that Defendant never intended to pay Plaintiff after Plaintiff had fully performed on the contract. Plaintiff testified that Defendant had approached him on one occasion and said: "I have not received the monies yet. As soon as I get them, I'll pay them to you." However, when Plaintiff later inquired about his pay, Defendant responded: "I did get the money, and I ended up paying it to the attorneys, and I will get you paid on the next one." Defendant continued to assure Plaintiff that he would be compensated on numerous other occasions between 2004 and May 2006. Plaintiff testified that Defendant stopped by his restaurant one day in 2006 and stated: "I'm still working on a project, and I will get you paid." Plaintiff recalled that Defendant approached him hoping that he might help Defendant with some introductions to potential business associates, so that he might "land some additional business" from which he would pay Plaintiff.

11

In May 2006, Defendant and Plaintiff saw one another at the Doubletree Hotel. They did not discuss the debt directly, but a mutual friend, Gallegos, who understood Plaintiff's situation, agreed to speak to Defendant on behalf of Plaintiff. Gallegos testified that when he inquired about the debt, Defendant told him that "[Plaintiff] was working for food." Evidence also suggested that Defendant had significant financial resources during the time that Plaintiff had requested reimbursement.

We reason that Defendant's actions in providing repeated false assurances were lacking in proper purpose or motive. The district court found that Defendant's repeated false assurances constituted "bad faith or at least acted with reckless disregard for the interests of Plaintiff." The New Mexico Supreme Court in *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.* similarly determined that punitive damages were appropriate where the defendant made implicit and explicit misrepresentations. 113 N.M. 9, 14-15, 820 P.2d 1323, 1328-29 (1991). The Supreme Court recognized that punitive damages may be predicated on promises which are "based on a concealment of known facts . . . especially in a situation where the defendant states an opinion or belief as to future occurrences which are shown to have had no support by the facts at the time the opinions or beliefs were given." *Id.* at 12, 820 P.2d at 1326 (internal quotation marks and citation omitted). "[P]unitive damages may be recovered for breach of contract when the defendant's conduct was

malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for [the] plaintiff's rights." *Golden Cone Concepts, Inc.*, 113 N.M. at 14-15, 820 P.2d at 1328-29 (internal quotation marks and citation omitted). Furthermore, in *Bogle*, this Court determined that the defendant's attempt to retain the plaintiff's purchase agreement commission for itself with no "legitimate business reason" was sufficiently culpable to warrant punitive damages because he was motivated by an "improper purpose." 2005-NMCA-024, ¶ 32.

In this case, Defendant's behavior was egregious enough to warrant punitive damages because he acted with an improper purpose and lacked a legitimate business reason for deceiving Plaintiff. Defendant was dishonest and deceitful by repeatedly making false promises to pay, which were unsupported by facts and without a proper business purpose. Defendant's repeated false assurances amounted to a reckless disregard for the rights of Plaintiff and a breach of Defendant's duty of good faith to Plaintiff. Moreover, they had the capacity to "lull" Plaintiff into the unfounded belief that he would be paid what was contractually owed to him, thereby delaying or preventing Plaintiff's pursuit of legal recourse. Therefore, punitive damages were appropriate under these facts.

Defendant argues that "[b]esides the breach of contract, the only other basis for the trial court's bad faith finding [was] the alleged subsequent reassurances that

13

Plaintiff would be paid." Defendant contends that a punitive damages award may not be predicated on false assurances. We disagree. Defendant's culpable conduct was not merely repeatedly representing that he would repay Plaintiff. Rather, Defendant acted with a culpable mental state and bad faith when he showed that he intended to avoid payment altogether by making numerous specific false assurances. We found such culpable conduct sufficient for punitive damages in *Bogle*. 2005-NMCA-024, ¶¶ 2-6, 29-32. There, the defendant "had full knowledge that [the plaintiff] was entitled to its commission and [contracted with another party] with the intention of depriving [the plaintiff] of its due." *Id*. ¶ 30. The district court determined that the defendant's "conduct was not justifiable under all the circumstances and that it was motivated by an improper purpose to divert the commission to itself." *Id*. We reiterated that "every intentional breach can be seen as a wrongful act [if] the breaching party knows [it] will cause financial harm to the other party." *Id*. ¶ 31. We concluded that there was no "legitimate business reason for an intentional breach. Rather [the defendant's] acts and motive fit[] the standard for malicious conduct." *Id*. ¶ 32.

Likewise, in this case, Defendant's repeated false reassurances were in bad faith and with the intention to deprive Plaintiff of his due. Defendant lied to Plaintiff about reasons he could not pay him, despite having resources to make payment and told

14

others that Plaintiff had performed the contract in exchange for food. We conclude that there were no legitimate business reasons to intentionally breach the contract, and Defendant's motive for avoiding payment fits the standard for malicious conduct.

Defendant further argues that the decision should be reversed because awarding punitive damages would result in a landslide of undesirable claims. The Court in *Romero* dispensed with this argument by recognizing that not every breach warrants punitive damages. Rather, punitive damages are only permissible where the beaching party's behavior was predicated on some odious practice rising to the established culpability threshold. *See Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 53, 127 N.M. 1, 976 P.2d 1 (stating that punitive damages are appropriate where "there coexists a culpable mental state indivisible from the conduct constituting liability . . . and bad faith in turn is a culpable mental state" (internal quotation marks and citation omitted)). Thus, awarding punitive damages in this case, like in *Romero*, will not result in a multitude of plaintiffs seeking punitive damages in contract cases because there is a threshold of culpability that must be proven to obtain such damages.

Last, to the extent that Defendant has argued that punitive damages should not be awarded because his actions amounted to efficient breach, he fails to cite where this argument has been preserved. *Crutchfield v. N.M. Dep't of Taxation & Revenue*,

2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). Furthermore, upon review of the record, we conclude that this argument was not preserved, and we therefore do not review it. *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) (stating "[t]o preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court").

Thus, we conclude that Defendant acted with a culpable mental state and bad faith in breaching the contract. The district court did not abuse its discretion in awarding punitive damages.

**IV. CONCLUSION**

For the reasons stated above, we affirm the district court.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**J. MILES HANISEE, Judge**