*687 ORDER AND JUDGMENT *
WILLIAM J. HOLLOWAY, JR., Circuit Judge.
Plaintiffs Maida Henderson and Dr. Ken Stoller sued San Miguel County and the San Miguel County Board of County Commissioners (collectively, the County), among other parties, for wrongful death after an Amtrak passenger train struck and killed their son in his car at a railroad crossing in New Mexico.[1] The County, the final remaining Defendant, moved for summary judgment, and the district court granted the motion. Plaintiffs appeal, invoking this court’s jurisdiction under 28 U.S.C. § 1291.
I
Plaintiffs’ son, Galen Stoller, was sixteen when he died in December 2007. The accident occurred near his home on a road that he regularly used. That road is referred to in the record by several names, including Wildflower Lane, which we will use in this opinion. Wildflower Lane, at least the relevant portion of it, was a dirt road which ran parallel to the BNSF railroad tracks for some distance before making a 90-degree turn toward the tracks about 200 feet before the crossing. The railroad’s right-of-way extends about 50 feet from the crossing. Inside the right-of-way, BNSF had installed a stop sign; on the same pole as the stop sign, the railroad had attached an X-shaped sign that indicated the presence of a railroad crossing. From the photograph of this sign in the record, it appears to be much smaller than the traditional X-shaped railroad crossing sign. The stop sign on the side of the crossing from which Galen Stol-ler was approaching was only 12 feet from the near rail. The train that struck Stol-ler’s vehicle was traveling at approximately 62 m.p.h. Speeds up to 79 m.p.h. are permitted on that stretch of track.
II
A
“We review a grant of summary judgment de novo, applying the same standard as the district court.” McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir.1998). Under Fed.R.Civ.P. 56(a), summary judgment should be entered by the district court if “there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.” On appeal,
[w]e examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable infer- *688 enees therefrom in the light most favorable to the party opposing the motion.
McKnight, 149 F.3d at 1128 (brackets and quotations omitted). Because Plaintiffs’ negligence claims are pendent state-law claims, we apply the substantive law of the forum state, New Mexico. See Lytle v. City of Haysville, 138 F.3d 857, 868 (10th Cir.1998). “We follow federal law, however, regarding the standard for granting summary judgment.” Brown v. Sears, Roebuck & Co., 328 F.3d 1274, 1278 (10th Cir.2003).
B
A negligence claim under New Mexico law generally requires “the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiffs damages.” Herrera v. Quality Pontiac, 134 N.M. 43, 73 P.3d 181, 185-86 (2003). On appeal, as in the district court, Plaintiffs have alleged that the County breached its duty of care in the following respects: (1) failing to place signs along the roadway that would warn motorists of the railroad crossing ahead; (2) failing to clear vegetation between the railroad tracks and the road that prevented a motorist at the crossing from seeing oncoming trains; (3) failing to ensure that the road was appropriately wide, level, and stable so that motorists could focus on the upcoming crossing rather than on negotiating the road itself; and (4) otherwise failing to take reasonable steps to make the crossing safe. We recognize that these theories of negligence may be interrelated so that one alleged defect could require greater care in responding to another.[2]
We focus on Plaintiffs’ first two allegations of negligence. These allegations are based on simple, common-sense propositions: that the crossing would have been made less dangerous if the County had placed an additional sign or signs to warn approaching motorists of the hazardous crossing,[3] and if the County had cleared vegetation from the approach to the track so that motorists had a clearer view of oncoming trains. Hence we will provide an overview of Plaintiffs’ evidence on these points.
First, as to the dangerousness of the crossing in general, as already noted one of the engineers in charge of the train at the time of the fatal accident revealed that he had experienced other “close calls” at this crossing. Several residents swore in deposition or in affidavits that they had direct experience with the hazardous situation from the point-of-view of drivers. Plaintiffs mother testified that, because of the speed of the trains “they seemed to get there very quickly. I mean, it was always sort of a sudden, oh, there’s a train kind of thing.” She added that “It seemed unex *689 pected. They would sort of appear.” Aplt. Appx. at 141. Resident John Kinsolv-ing stated: “I have always been concerned with the crossing at Wildflower Lane and County Frontage Road [where the instant tragedy occurred] and have been shocked on several occasions when I was crossing the tracks having barely being [sic] missed when the train did not blow its horn.” Id. at 225.
Shelley Oram stated that she had lived in the area for over twelve years and on “numerous occasions” had been “surprised to find a fast moving train right before me that I could neither see nor hear until I was nearly at the track. On both sides of this crossing there are blind curves that make it impossible to see a train coming from either direction.” She further swore that there had been “many occasions when I have not heard the train sound its horn until it had already passed the crossing.” Id. at 228.
Another resident, Diane Sarris, said that it was even difficult to see the trains at this crossing from the stop sign, which is on the railroad’s right-of-way about twelve feet from the tracks: “In the approach of the track, I have stopped at the railway crossing and as I started to cross the tracks, there appeared a train that I had not seen at my first visual of looking both ways. It appeared that train blended with the colors of the background in the area.” Id. at 287. Former resident Cynthia Karrick, similarly stated that visibility was very bad at the crossing: “Safety at this crossing is concerning due to not being able to clearly see oncoming trains or hearing [sic] the train blow its horn.” She further said that once, after having stopped at the stop sign at the crossing, “I did not hear the train blow its horn and before proceeding I was shocked to see the train appear in front of me. It appears that trains blend with the different colors of the surrounding foliage in the area.” Id. at 249.
Second, the Plaintiffs provided evidence that vegetation obscured a driver’s view of the crossing when approaching along the County’s road. Plaintiffs cite two significant items. Mr. Clayton Onnen, one of the two engineers in control of the train at the time of the accident, testified in his deposition that vehicles approaching the crossing could not be seen from the train until they emerged from the bushes and trees along the fence line. The fence line, other evidence showed, is on the boundary of the railroad right-of-way. In follow-up questioning, the engineer said that a vehicle could not be seen until it came “out of the curve and into the right-of-way.”[4] Mr. Onnen also testified that he could recall “a couple of times” when he had “close calls” at this crossing. Aplt. Appx. 136-37. In the posture of this case we are duty-bound to draw the obvious inference that when vehicles are out of sight from the train, the train is also out of sight for drivers of those vehicles.
Plaintiffs also cite at page 10 of their Opening Brief the report of defense expert Brian Charles, who stated: “There are trees and bushes located outside the right of way fence that are left and right of the road. The bushes and trees obstruct the view of the train approach when the Stol-ler vehicle is outside the fence line.” Id. at 311 (emphasis added). This of course is consistent with the deposition testimony of the train’s engineer, Mr. Onnen, which a jury would be free to credit. If there is any ambiguity in this evidence, we must of *690 course take it in the light most favorable to Plaintiffs because we are reviewing a grant of summary judgment.
The record evidence is not specific as to the location of foliage obstructing a motorist’s view of approaching trains. We have noted, however, that there is evidence from which a jury could decide that foliage outside the railroad’s right-of-way creates or contributes to the problem. The state of this evidence is not fatal at the summary judgment stage for two reasons. First, it is a reasonable inference from Plaintiffs’ evidence that at least some of the visual obstruction is created by foliage within the County’s right-of-way. The County admittedly had done nothing to improve visibility along Wildflower Lane. It would be quite illogical — and quite contrary to our standard of review of summary judgment decisions — to assume that the growth stopped on its own upon reaching the County’s right-of-way. Second, and more importantly, even if at trial it were shown that none of the vision-obscuring vegetation was within the County’s right-of-way, a jury could still determine that the County’s road was unreasonably dangerous for failure to provide adequate warning of this hazard lying just across the line delineating the limit of the County’s ownership of the road.
Thus Plaintiffs’ evidence was clearly sufficient for a jury to determine that the crossing was unreasonably dangerous.
C
Plaintiffs’ also provide legal support for submitting this case to a jury. As we have noted, New Mexico law requires a plaintiff seeking to recover under a negligence theory to show “the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiffs damages.” Herrera v. Quality Pontiac, 134 N.M. 43, 73 P.3d 181, 185-86 (2003). The existence of a duty is not challenged here: a representative of the County testified that the County has a duty to maintain its roads in a safe condition, and the County does not contend otherwise in this appeal.
As for the standard of care, the County contends that Plaintiffs had no evidence to guide the jury in determining the “necessary standards.” The County argues that the duty of reasonable care that is applicable to ordinary negligence cases is either inapplicable here or else requires elucidation from an expert witness to be rendered meaningful for a jury. In response to Plaintiffs’ invocation of the common-law standard of reasonable care, the County concedes that it was subject to this duty, yet contends that without expert testimony, “this ‘reasonable duty’ is only guesswork by the jury.” Aple. Brief at 25.
A jury is quite capable of determining whether the County’s inaction was reasonable under the common law standard. See Henderson v. National R.R. Passenger Corp., 412 Fed.Appx. at 85 (“The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case.”) (emphasis added) (quoting Herrera v. Quality Pontiac, 134 N.M. 43, 73 P.3d 181, 195 (2003)).
Further support for Plaintiffs’ contention that expert testimony is not required here is provided by Cumming v. Nielson’s, Inc., 108 N.M. 198, 769 P.2d 732 (N.M.App.1988). In that case an injured motorist had sued, inter alia, the contractor which had been performing construe *691 tion work at the site of the accident. The state appellate court held that expert testimony was not required in that case to elucidate the defendant contractor’s duty of care. The court went on to say that although “expert testimony may be useful, we hold that, absent special circumstances not present here, it generally is not required.” 769 P.2d at 735 (emphasis added). The context of Cumming is not analytically different from the instant case. Here, as in Cumming, expert testimony could be useful to focus on what the general standard of reasonable care means in the particular circumstances, but it is not a necessity.
Plaintiffs’ evidence showed that the crossing was dangerous. It is undisputed that the crossing itself was on the railroad’s right-of-way, which also extended approximately 50 feet from the center of the tracks. But the County’s duty of care is not strictly limited by the property line. See Bober v. New Mexico State Fair, 111 N.M. 644, 808 P.2d 614 (1991). In Bober, the plaintiff was a motorist who had been injured in a collision with a car that was exiting the property of the defendant state fair. The collision occurred outside the boundary of the fair. The New Mexico Supreme Court held that the landowner’s duty to avoid creating or permitting an unsafe condition on its premises was not limited by the physical boundaries of the land. Id. at 618-619. Instead, the state fair could be found to have acted unreasonably under Ms. Bober’s theory that it permitted “a concentrated stream of traffic [to exit] the premises at a single point without adequate traffic controls.... ” 808 P.2d at 618.
Applying the holding of Bober, we hold that a jury could determine that the County’s failure to take any action at all to make the crossing safer by attention to its roadway approaching the crossing breached the County’s duty of reasonable care. As we have- noted, under the doctrine of law of the case we are bound by the previous panel’s determination that a jury could find the County’s negligence to have been a proximate cause of the accident. Therefore, it was error for the district court to grant the County’s motion for summary judgment.
The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this order and judgment.

 After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. Plaintiffs originally sued in state court. The original Defendants included Amtrak, and the Defendants removed the case to federal district court under 28 U.S.C. § 1349, on the factual basis that the United States owned more than 50% of Amtrak’s stock. In a previous appeal, this court affirmed the district court’s summary judgment in favor of the Burlington Northern Santa Fe Corporation, the railroad known as BNSF, over whose tracks the train had been running. See Henderson v. National Railroad Passenger Corp., 412 Fed.Appx. 74 (10th Cir.2011). We also affirmed the district court’s decision to retain jurisdiction under 28 U.S.C. § 1367(a) after Plaintiffs had voluntarily dismissed their claims against Amtrak.

. Accordingly, the discussion which follows on the sufficiency of certain evidence adduced by Plaintiffs does not imply that other evidence should be disregarded on remand. There is no need to discuss all of Plaintiffs' evidence once it is shown that the district court erred in granting summary judgment to the County.

. In the previous appeal, we noted that BNSF had produced evidence tending to show that Galen Stoller had failed to obey the stop sign. In the posture of the case at that time, the County had conceded negligence in order to move for summary judgment on the issue of causation. This court held that even if a jury were to find that Stoller had failed to obey the stop sign, the jury could also find that this failure was not the sole cause of the accident. In this appeal, of course, the question is whether a jury could find that the County was negligent. It is law of the case that if the County was negligent, a jury could find that negligence to have been a proximate cause of the accident.

. We noted this evidence in deciding the prior appeal. See Henderson v. Nat’l R.R. Passenger Corp., 412 Fed.Appx. 74, 86 (10th Cir.2011).