IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2018

## CHARLES M. FLAGG, JR. v. HUDSON CONSTRUCTION COMPANY ET AL.

**Appeal from the Circuit Court for Polk County**
No. 13-CV-93        Lawrence Howard Puckett, Judge
_____

**No. E2017-01810-COA-R3-CV**
_____

A motorcyclist sustained severe injuries in an accident on a recently paved portion of a state maintained highway. Alleging that his accident was caused by loose gravel on the highway from the recent paving project, the motorcyclist filed separate actions against the state contractor who resurfaced the state highway and the State of Tennessee. The two actions were consolidated in the circuit court for discovery and trial. Both defendants moved for summary judgment arguing that the plaintiff could not prove that the gravel came from the paving project or that the defendants had notice of the gravel before the accident. The state contractor also argued that it was discharged from liability under the State Construction Projects Liability Act. *See* Tenn. Code Ann. § 12-4-503 (2011). The trial court initially denied the motions. But after the defendants filed motions to alter or amend based on new evidence, the court reversed its decision and granted the defendants summary judgment on all claims. The plaintiff appealed. Upon review, we conclude that the trial court erred in excluding lay witness opinion testimony and in ruling that expert proof was necessary to determine the source of the gravel. Taking the strongest legitimate view of the evidence in favor of the nonmoving party, we conclude that the plaintiff demonstrated genuine issues of material fact precluding summary judgment. So we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON II and ARNOLD B. GOLDIN, JJ., joined.

John H. Templeton and Richard A. Schulman, Chattanooga Tennessee, for the appellant, Charles M. Flagg, Jr.

P. Alexander Vogel, Knoxville, Tennessee, for the appellee, Hudson Construction Company.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Peako A. Jenkins, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.**

In July 2012, the Tennessee Department of Transportation ("TDOT") contracted with Hudson Construction Company to resurface a section of State Highway 315 in Polk County, Tennessee. The project involved an initial application of a layer of rock chips and adhesive material to fill in cracks in the road followed by a thin layer of microsurfacing for a smoother driving surface. As with all state road construction projects, a TDOT employee was onsite throughout the project to supervise the work. *See* Tenn. Code Ann. §§ 54-1-126, 54-5-120 (2008).

On October 16, Hudson Construction finished application of the microsurfacing material. The contractor then inspected the road in preparation for the final step of the project, permanent striping.[1] Hudson Construction or a subcontractor periodically cleaned excess gravel and debris from the road throughout the paving process. But after completing the microsurfacing, the contractor only cleaned those portions of the road that it deemed necessary for the permanent striping to adhere properly. Hudson Construction then left the work site. On October 16 and 17, a subcontractor applied the permanent stripes.

On October 19, after receiving notice from the onsite inspector that the work was finished, Billy Curtis, TDOT's project supervisor, inspected the completed work. He looked for excess gravel, overall cleanliness, the integrity of the permanent striping, and whether the resurfacing complied with the plans and specifications in the contract. Mr. Curtis explained that, when inspecting road construction projects, he typically drove through the construction zone, only stopping and exiting his vehicle when he deemed it appropriate. He found no problems with this project. So he notified Hudson Construction that same day that the work was acceptable and the road construction signs could be removed.

---

[1] Throughout the project, temporary stripes were painted on the roadway on a daily basis. Permanent stripes were applied at the end of the project using a process called thermoplasty, which produced light-reflective road markings.

On October 25, 2012, Charles M. Flagg, Jr. and a passenger, Debra Taylor, were involved in a motorcycle accident on a recently paved portion of State Highway 315. According to Mr. Flagg, his rear tire slid on a patch of loose gravel when he was approaching a curve in the road, causing him to lose control and crash. Although Ms. Taylor sustained only minor injuries, Mr. Flagg was transported to an area hospital for treatment of more serious injuries.

Mr. Flagg filed a complaint in the Circuit Court for Polk County, Tennessee, against Hudson Construction for breach of contract, negligence, and defective construction. Mr. Flagg also filed a claim against the State of Tennessee in the Tennessee Claims Commission, asserting that the State had negligently inspected and/or maintained the state highway and failed to remedy a known dangerous condition on the highway. *See* Tenn. Code Ann. § 9-8-307(a)(1)(I), (J) (Supp. 2018). After the Claims Commission transferred the claim against the State to the circuit court, the two actions were consolidated for purposes of discovery and trial. *See id.* § 9-8-404(b) (2012).

Hudson Construction and the State filed separate motions for summary judgment challenging Mr. Flagg's ability to establish essential elements of his claims. The contractor also argued that it was discharged from liability under the State Construction Projects Liability Act. *See id.* § 12-4-503 (2011). In response, Mr. Flagg filed several lay witness affidavits, pictures of the accident scene, and portions of the road construction contract. The trial court initially denied the defendants' motions based on multiple genuine issues of material fact. In doing so, the court relied upon "compelling" pictorial evidence. According to the court, the pictures showed a "spotty" permanent white line from which it would be reasonable to infer that "either the surface of the road had loose gravel on it when it was painted (striped) with the white paint or the surface material, due to defect in construction, gave way after it was painted."

The State filed a motion to alter or amend the court's ruling based on new evidence. The State submitted additional photographs of the accident scene showing a solid white line and an explanatory affidavit from Mr. Curtis. Hudson Construction also moved to alter or amend the court's ruling relying on the new evidence.

After reviewing the new evidence, the trial court determined that the permanent white line was solid rather than spotty. The court then re-evaluated its previous ruling based on the amended finding. The court excluded opinion testimony in Mr. Flagg's lay witness affidavits, ruling that such testimony should come from an expert. Based on the remaining evidence, the court found that Mr. Flagg could only prove that gravel was on the road October 18 and the day of the accident. Because Mr. Flagg could not prove that the gravel on the day of the accident came from the paving job or that the defendants had notice of the gravel before the accident, the court granted summary judgment to the defendants on all claims. This appeal followed.

3

## II.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment does not bear the burden of proof at trial. Thus, the burden of production on summary judgment could be satisfied "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

### A. Admissibility of Mr. Flagg's Affidavits

In an effort to show a genuine issue for trial, Mr. Flagg filed affidavits from Donald Franke and Anna and Kristen DeLee. Donald Franke, a fellow motorcycle enthusiast, had a motorcycle accident in the same location as Mr. Flagg on October 18.

According to Mr. Franke, he crashed his motorcycle after encountering an unexpectedly large amount of loose gravel in his lane of travel. Anna and Kristen DeLee, Mr. Flagg's granddaughters, visited the site of Mr. Flagg's accident a week after the accident and took pictures of gravel on the road. All three witnesses described the gravel they saw as the same color and consistency as the new asphalt and opined that it "appeared to be from the paving job."

The defendants argued that only a paving expert could accurately determine the source of the gravel. Todd Nance, Hudson Construction's project manager, had worked in the paving industry for 25 years. He described the size and type of rock chips used in the paving process and the steps the contractor took to ensure that all excess gravel was removed from the road. Based on his knowledge and experience, he maintained that the gravel in the pictures did not look like the type or size of stone used during the paving project.

The trial court excluded the testimony that the gravel "appeared to be from the paving job" as inadmissible lay opinion testimony, ruling that "[t]his type of testimony should come from an expert." *See* Tenn. R. Evid. 701, 702. Evidence, including the substance of affidavits, filed in "support or to oppose a motion for summary judgment must be admissible." *Shipley v. Williams*, 350 S.W.3d 527, 564-65 & n.12 (Koch, J., concurring in part and dissenting in part); *see* Tenn. R. Civ. P. 56.06. We review the trial court's decision on the admissibility of evidence for an abuse of discretion. *Shipley*, 350 S.W.3d at 552. An abuse of discretion occurs where the court "appl[ies] an incorrect legal standard or reach[es] an illogical or unreasonable decision that causes an injustice to the complaining party." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g*, (Aug. 26, 2015).

1. Expert Testimony

Whether expert testimony is necessary depends on the subject matter of the inquiry. *Kinley v. Tenn. State Mut. Ins. Co.*, 620 S.W.2d 79, 81 (Tenn. 1981). If an ordinary person can understand the subject matter without the aid of specialized knowledge or experience, expert testimony is not required. *Lawrence Cty. Bank v. Riddle*, 621 S.W.2d 735, 737 (Tenn. 1981).

For example, no expert testimony was required to establish the standard of care applicable to a construction contractor who left a trench open during several days of heavy rain while working on a public utility project. *See id.* at 736-37. Similarly, expert testimony was unnecessary to determine whether a road contractor had returned roads to their pre-excavation condition. *Cocke Cty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 235 (Tenn. 1985). And our court has held that a jury could determine "whether it was negligent to leave the metal end of a guardrail exposed to approaching traffic" without expert testimony. *Usher v. Charles Blalock & Sons, Inc.*,

5

339 S.W.3d 45, 61-62 (Tenn. Ct. App. 2010); *see also Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at \*6 (Tenn. Ct. App. Dec. 22, 2015) (concluding that expert testimony was unnecessary to determine whether a sidewalk or wheelchair ramp was unreasonably dangerous); *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 440 (Tenn. Ct. App. 2013) (holding that a jury could decide whether an ambulance attendant was negligent in not locking stretcher in place based on common experience).

We conclude that expert testimony is not necessary to determine whether the gravel on the road came from the paving project. Gravel and asphalt paving are familiar concepts in our society. And an ordinary person can comprehend the physical characteristics of gravel and the mechanics of the paving process. A juror may credit Mr. Nance's opinion as to the source of the gravel over the opinions of the lay witnesses based on his superior knowledge of and experience with paving. But that does not mean that expert testimony is required. "The mere availability of expert proof does not give rise to a corresponding obligation that it be used." *Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999).

2. Lay Opinion Testimony

Tennessee Rule of Evidence 701 governs the admission of lay opinion testimony. Tenn. R. Evid. 701. Although Tennessee courts traditionally limited the use of lay opinions, Rule 701 does not take such a restrictive approach. *See State v. Sparks*, 891 S.W.2d 607, 613 (Tenn. 1995) (discussing previous law). Similar to its federal counterpart, our rule "reflects the trend in favor of allowing lay opinion testimony." *State v. Sweeney*, No. 2016-02372-CCA-R3-CD, 2018 WL 1559973, at \*7 (Tenn. Crim. App. Mar. 29, 2018), *perm. app. denied*, (Tenn. July 18, 2018). To be admissible, lay opinion testimony must be "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a).

The first requirement is that the opinion be based on first-hand knowledge or observation. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 711 (Tenn. Ct. App. 1999); Fed. R. Evid. 701 advisory comm. notes to 1972 proposed rules. In this respect, Rule 701 essentially mirrors the personal knowledge requirement in Rule 602. *See* Tenn. R. Evid. 602 advisory comm'n cmt. Personal knowledge may stem from the witness's educational background or practical experience. *See Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 445-46 (Tenn. 2015). "Absolute certainty" is not required, but the opinion may not be based on "mere speculation." *State v. Land*, 34 S.W.3d 516, 529 (Tenn. Crim. App. 2000) (discussing personal knowledge requirement in Tennessee Rule of Evidence 602). The trial court's task is to determine whether the witness "had a sufficient opportunity to perceive the subject matter about which he or she is testifying." *Id.*

6

The second requirement, helpfulness, is a relatively low bar. It is designed to exclude "meaningless assertions which amount to little more than choosing up sides." Fed. R. Evid. 701 advisory comm. notes to 1972 proposed rules. Otherwise, Rule 701 presumes "the natural characteristics of the adversary system" will expose any weaknesses in the opinion. *Id.*

Although not expressly stated in the Tennessee rule, our courts will not permit lay witnesses to provide opinion testimony that is otherwise admissible under Rule 701 if that opinion is based on "scientific, technical, or other specialized knowledge." *State v. Benesch*, No. M2015-02124-CCA-R3-CD, 2017 WL 3670196, at *24 (Tenn. Crim. App. Aug. 25, 2017); *see also* Fed. R. Evid. 701 advisory comm. notes to 2000 amendments (explaining that Federal Rule 701 was amended to specifically exclude lay opinion testimony based on scientific, technical or other specialized knowledge within the scope of Rule 702). "The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992).

We conclude that the proffered lay opinion testimony is admissible. The opinions are based on personal observation of the gravel and previous experience with newly paved roads. The opinions have a rational basis—the gravel's color and consistency. And the testimony is helpful in understanding what the witnesses observed and in determining the source of the gravel. The defendants' objections go to the weight of the testimony, not admissibility. The validity of these witnesses' opinions can be tested at trial. *See Kim v. Boucher*, 55 S.W.3d 551, 556 (Tenn. Ct. App. 2001) (concluding that lay witness testimony that car was traveling fast was admissible even though witness was fourteen years old and had never driven a car).

Having decided that expert testimony was not required and the lay witness opinions were admissible, we must determine whether genuine issues of material fact preclude the grant of summary judgment. *See* Tenn. R. Civ. P. 56.04. In so doing, we do not "weigh" the evidence or substitute our judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd*, 847 S.W.2d at 211. Instead, we "take the strongest legitimate view of the evidence in favor of the nonmoving party." *Byrd*, 847 S.W.2d at 210. When considering a motion for summary judgment, courts grant "all reasonable inferences in favor of [the nonmoving party] and discard all countervailing evidence." *Id.* at 210-11. "[I]f there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Id.* at 211.

B. HUDSON CONSTRUCTION

Mr. Flagg asserted both negligence and breach of contract claims against Hudson Construction.[2] A negligence claim requires proof of five elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Hudson Construction challenged Mr. Flagg's ability to prove both a duty of care and a breach of that duty.

1. Duty of Care

Hudson Construction concedes that it owed a duty of care to motorists such as Mr. Flagg during construction. But the contractor argues that its responsibility ended once the State accepted the work. *See* Tenn. Code Ann. §§ 12-4-501 to -503 (2011). All work on state road construction projects is "subject to the inspection, approval, and acceptance" of TDOT. *Id.* § 54-5-120. Under the State Construction Projects Liability Act, the State's acceptance of a state contractor's work relieves the state contractor from liability for negligence claims arising from that work as long as the work was performed in accordance with the applicable plans and specifications.[3] *Id.* § 12-4-503. It is undisputed that Hudson Construction's work was performed as a state contractor on a state construction project. *See id.* § 12-4-502(3), (5). But Mr. Flagg maintains that material factual disputes exist as to when the State accepted the work and whether the work complied with the applicable plans and specifications.

a. Acceptance of the Work

Acceptance is defined in the Act as "notification by an authorized officer or employee of the state that the work completed has been in accordance with the terms and conditions of the state contract." *Id.* § 12-4-502(1). Hudson Construction's contract

---

[2] Although the complaint alleged three causes of action against Hudson Construction, we conclude that the defective construction claim is no more than a restated negligence claim.

[3] Specifically, the Act provides:

Upon acceptance by the state of a state contractor's work, provided that such state contractor's work is done in accordance with the plans and specifications, such state contractor is discharged from all liability to any party by reason of its lack of ordinary care in the performance of, or failure to perform, such work on such state construction project.

Tenn. Code Ann. § 12-4-503.

incorporated TDOT's Standard Specifications for Road and Bridge Construction. The acceptance provision specified:

> Upon due notice from the Contractor of presumptive completion of the entire project, the Engineer will make an inspection. If all construction provided for and contemplated by the Contract is found to be completed to his satisfaction, then that inspection shall constitute the final inspection and the Engineer will make the final acceptance and notify the Contractor in writing of his acceptance as of the date of the final inspection.

> If, however, the inspection discloses any work, in whole or in part, as being unsatisfactory, the Engineer will give the Contractor the necessary instructions for correction of same, and the Contractor shall immediately comply with and execute such instructions. Upon correction of the Work, another inspection will be made which shall constitute the final inspection, provided the Work has been satisfactorily completed. In such event, the Engineer will make the final acceptance and notify the Contractor in writing of this acceptance as of the date of final inspection.

Hudson Construction presented evidence that the State accepted its work on October 19. Mr. Curtis, TDOT's project supervisor, testified that he was authorized to approve the work. After receiving notice of presumptive completion of the project, Mr. Curtis conducted an inspection. Finding no problems, on October 19, he notified Hudson Construction that the work was satisfactory. Almost two years later, the State sent Hudson Construction written notice of completion, which confirmed that the work was accepted on October 19, 2012.

To create a genuine issue of material fact on the timing of the acceptance, Mr. Flagg relied on an internal TDOT email message regarding a subsequent inspection on November 6, 2012. Frank Campbell, a special projects coordinator for TDOT, inspected the completed work on November 6 and also found it acceptable. Mr. Campbell explained that his inspection was for confirmation purposes only. He agreed that Mr. Curtis was authorized to accept the work for the State. We conclude that proof of a subsequent inspection does not create a genuine issue of material fact as to when the State accepted Hudson Construction's work. The undisputed proof is that Mr. Curtis was authorized to accept the work, and he did so on October 19, 2012.

b. Compliance with Plans and Specifications

Mr. Flagg also contends that Hudson Construction deviated from the plans and specifications by leaving loose gravel on the road before the final inspection. The

Standard Specifications had a final cleanup provision.[4] Mr. Flagg submitted pictures taken a week after his accident showing loose gravel in the road. And Mr. Franke testified in his affidavit that these pictures accurately reflected the condition of the road on October 18. Paula Wilcox, the onsite inspector, agreed that the amount of gravel in the pictures was "improper" and, if she had seen it, she would have asked Hudson Construction to remove it.

Proof of an unacceptable amount of gravel on the road on October 18 created a genuine issue of material fact as to whether Hudson Construction complied with the Standard Specifications. The fact that Mr. Curtis did not see any gravel on October 19 does not prove that the gravel was gone. During construction, excess gravel was removed using a power broom. There is no evidence in this record that the road was cleaned after October 16. And Mr. Flagg testified that the gravel he saw after his accident could not be removed naturally in a gust of wind. Viewing the evidence in the light most favorable to the nonmoving party, a reasonable juror could determine that the gravel was present on October 19, but the state inspector failed to see it. *See Brown v. Chester Cty. Sch. Dist.*, No. W2008-00035-COA-R3-CV, 2008 WL 5397532, at *4 (Tenn. Ct. App. Dec. 30, 2008) ("From all of this evidence, a reasonable trier of fact could infer that the step was bent before the game, even if Canada did not see it or saw it but did not perceive it to be a dangerous condition."); *Henson v. F.W. Woolworth's Co.*, 537 S.W.2d 923, 925 (Tenn. Ct. App. 1974) ("There was proof from which the jury could reasonably find that the bubble solution was spilled on the floor before Manager Veal and Supervisor Tate walked down the aisle and they negligently failed to see such solution which they could and would have seen had they been attentive.").

---

[4] The final cleanup provision specified:

Before final acceptance of the Work, the entire rights-of-way, all material pits, all waste areas, all areas and access roads used by the Contractor, all streams in or over which he has worked, and all ground occupied by the Contractor, in connection with the Work, shall be cleaned of all forms, falsework, temporary structures, temporary erosion control measures, excess materials, equipment, rubbish, and waste, and all parts of the work shall be left in a neat and presentable condition. The entire right-of-way, all material pits, all waste areas, all areas and access roads used by the Contractor shall be final stabilized per the TN NPDES Construction General Permit criteria or per the agreed upon Reclamation Plan. Final cleanup shall include the mowing of the rights-of-way as required. If the project was graded under a previous Contract, final cleanup will be performed within the construction limits of work being performed and other areas disturbed or otherwise requiring cleanup due to the Contractor's operations. No rubbish, waste or debris shall be deposited on or in sight of the rights-of-way. All damage to private and public property shall be replaced, repaired, or settled for.

2. Breach of the Duty of Care

The trial court ruled that Mr. Flagg failed to come forward with any evidence that Hudson Construction deviated from the standard of care. As discussed above, Mr. Flagg produced evidence from which a reasonable juror could find that Hudson Construction failed to remove an unacceptable amount of gravel from the construction site before the final inspection. And a juror could reasonably infer that Mr. Curtis failed to see the gravel during his inspection.

We also conclude that a rational juror could find that the gravel remained on the road through the date of the accident. There is no proof that the October 18 gravel was affirmatively removed. According to Mr. Franke, gravel was in the same location on the road on both October 18 and October 25. And the gravel looked the same both on October 18 and after Mr. Flagg's accident.

To reach the jury, Mr. Flagg need not "exclude every other reasonable conclusion" from the evidence. *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985). He simply must "present proof which, if believed by the jury, makes plaintiff's theory of the case more probable than the theory of the defendant." *Id.* Mr. Flagg's theory that the gravel from the paving job remained on the road between October 18 and 25 is more probable than the defendants' theory that the October 18 gravel vanished only to be replaced later by similar gravel from another source in the same location.

Unlike the trial court, we do not find the condition of the permanent white line dispositive. Certainly, if the permanent road markings were applied over loose gravel, it tends to prove that Hudson Construction was negligent. Several witnesses testified about the importance of cleaning the road before application of the permanent striping. But a solid white line does not prove the absence of negligence. Mr. Flagg presented direct evidence of gravel on the road on October 18. And Hudson Construction had a duty to remove all excess gravel and debris from the road before final acceptance. Failure to remove scattered loose gravel from the road violated that duty and posed a foreseeable risk of injury to motorists. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) ("[A]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others.").

2. Breach of Contract

Mr. Flagg also brought a breach of contract claim against Hudson Construction as a third party beneficiary. Hudson Construction did not challenge Mr. Flagg's status as a third party beneficiary to the state contract. *See Coburn v. City of Dyersburg*, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989) (describing the required showing for a plaintiff claiming to be an intended third party beneficiary of a government contract). Rather, the

contractor claimed it was entitled to summary judgment because Mr. Flagg could not establish a breach. As discussed above, Mr. Flagg created a genuine issue of material fact as to whether Hudson Construction complied with its contractual duty to clean excess debris from the road before final acceptance. So the court erred in granting Hudson Construction summary judgment on this basis.

### C. STATE OF TENNESSEE

Monetary claims against the State are governed by the Claims Commission Act. Tenn. Code Ann. § 9-8-307. Under the Claims Commission Act, the State waives sovereign immunity for monetary claims based on the acts or omissions of state employees falling within 23 delineated categories. *Id.* § 9-8-307(a)(1). Mr. Flagg's claims arguably fall within two of those categories: negligent inspection and maintenance of state highways or dangerous conditions on state highways. *See id.* § 9-8-307(a)(1)(I), (J).

1. Negligent Inspection and Maintenance of State Highways

Tennessee Code Annotated § 9-8-307(a)(1)(I) waives sovereign immunity for monetary claims based on

> Negligence in . . . inspection of . . . public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways . . . .

We analyze the State's liability using "the traditional tort concepts of duty and the reasonably prudent person's standard of care." *Id.* § 9-8-307(c). The State argued that it was entitled to summary judgment because Mr. Flagg could not establish a breach of the duty of care. *See McCall*, 913 S.W.2d at 153.

"The State does not have a duty to make its roadways absolutely safe." *Elliott v. State*, No. M2016-00392-COA-R3-CV, 2017 WL 976053, at *3 (Tenn. Ct. App. Mar. 13, 2017). The mere fact that Mr. Flagg encountered a dangerous condition on the road does not prove that the State was negligent in maintaining the road. *See Francoeur v. State*, No. W2007-00853-COA-R3-CV, 2007 WL 4404105, at *10 (Tenn. Ct. App. Dec. 18, 2007) ("[T]he bare fact that a pothole existed on a state road is not sufficient to prove that the State was negligent in maintaining the road."). Mr. Flagg must demonstrate that the State's conduct fell below the applicable standard of care. *See id.* at *11.

Mr. Flagg contends that the State was negligent in inspecting the road after it was repaved. He produced direct evidence that an unacceptable amount of gravel was on the

12

road before the state inspection. Ms. Wilcox agreed that, if this amount of gravel had been discovered during the inspection, the State would have told Hudson Construction to remove it. But Mr. Curtis did not see any gravel during his driving inspection. We conclude that Mr. Flagg presented just enough evidence to allow a fact finder to consider whether Mr. Curtis's inspection was negligent. *See Henson*, 537 S.W.2d at 925 (concluding that proof that bubble solution was spilled on the floor before the store employees inspected the area created a jury issue as to whether the inspection was negligent). *But see Fuller v. Feingold*, No. 02A01-9809-CV-00252, 1999 WL 250182, at *4 (Tenn. Ct. App. Apr. 28, 1999) ("Without proof that the inspection performed by Terminix fell below the normal standard of care or that termites were present when the Terminix inspection occurred on November 22, 1995, the Fullers cannot prove any breach of duty by Terminix.").

2. Dangerous Conditions on State Maintained Highways

Mr. Flagg also seeks recovery under Tennessee Code Annotated § 9-8-307(a)(1)(J), which governs monetary claims arising from dangerous conditions on state maintained highways. In addition to proof of a dangerous condition, a claimant seeking recovery under this category must demonstrate that the risk of injury was foreseeable and that "notice [was] given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures[.]" Tenn. Code Ann. § 9-8-307(a)(1)(J); *see also Sweeney v. State*, 768 S.W.2d 253, 254-55 (Tenn. 1989).

The State moved for summary judgment based solely on lack of notice. Ms. Wilcox and Mr. Curtis never saw the gravel. And they testified that TDOT was never contacted or otherwise made aware of any gravel on the roadway before Mr. Flagg's accident.

In the absence of proof of actual notice, Mr. Flagg contends that there is a material factual dispute as to whether the State may be charged with constructive notice. In determining whether constructive notice is permitted in this category, we are guided by cases interpreting an identical notice provision in another subsection of this statute, Tennessee Code Annotated § 9-8-307(a)(1)(C), which governs claims arising from dangerous conditions on state-controlled real property.[5] *See, e.g., Bowman v. State*, 206 S.W.3d 467, 472-73 (Tenn. Ct. App. 2006); *Sanders v. State*, 783 S.W.2d 948, 951-52 (Tenn. Ct. App. 1989). Our courts have interpreted category (C) as a codification of common law premises liability. *See Hames v. State*, 808 S.W.2d 41, 44 (Tenn. 1991). Based on the similarity between these two subsections, we deem it appropriate to apply the same analytical framework to claims under category (J).

---

[5] Claimants seeking recovery under category (C) must also "establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures . . . ." Tenn. Code Ann. § 9-8-307(a)(1)(C).

In a premises liability action, the owner or operator may be held liable for injuries caused by a dangerous condition on the premises if, in addition to negligence, the injured party demonstrates actual or constructive notice. *Blair*, 130 S.W.3d at 764. A plaintiff may establish constructive notice in several ways. If the owner or his agent caused or created the dangerous condition, the owner will be charged with notice. *Id.* If a third party created the dangerous condition, notice may be established through proof that (1) a dangerous condition existed for such a length of time that a reasonably prudent person should have been aware of it or (2) the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition" which would also put the premises owner on constructive notice. *Id.* at 764, 765-66.

Here, as discussed above, Mr. Flagg produced evidence from which a reasonable fact finder could conclude that Hudson Construction caused or created the dangerous condition. The State may be charged with notice of a dangerous condition caused or created by its agent. *See Hodge v. State*, No. M2004-00137-COA-R3-CV, 2006 WL 36905, at *4 (Tenn. Ct. App. Jan. 5, 2006) ("The fact that the State assumed the responsibility to see to it that the construction was being performed in a safe manner provides the necessary factual predicate for potential liability under both Tenn. Code Ann. § 9-8-307(a)(1)(J) and Tenn. Code Ann. § 9-8-307(a)(1)(I)."); *Hamby v. State*, No. W2002-00928-COA-R3-CV, 2002 WL 31749450, at *6 (Tenn. Ct. App. Dec. 4, 2002) ("The first question is whether the state or its agent(s) created or constructed the offending instrumentality. If that answer is yes, the inquiry stops and the state is charged with actual notice.").

Even without evidence that the State's agent created the dangerous condition, we conclude that there is material evidence of constructive notice. To withstand a motion for summary judgment, the plaintiff must come forward with material evidence from which the trier of fact could conclude that the dangerous condition existed for a sufficient time and under such circumstances that, in the exercise of reasonable diligence, the condition should have been discovered. *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). Whether a dangerous condition "existed long enough that a reasonable man exercising reasonable care would have discovered it" is a fact question. *Allison v. Blount Nat'l Bank*, 390 S.W.2d 716, 719 (Tenn. Ct. App. 1965). Only when there is a complete lack of proof as to "when and how the dangerous condition came about," do we remove this question from the trier of fact. *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987).

Mr. Flagg presented direct evidence that gravel was on the road on October 18. Absent any proof that the gravel was removed, it would be reasonable to infer that the gravel was present for at least eight days prior to the accident. Whether the gravel was present on the road a sufficient length of time that the State, in the exercise of reasonable diligence, could have discovered it is a question for the finder of fact. *See Allison*, 390

S.W.2d at 719. In making this determination, the fact finder may consider all the surrounding circumstances, including the final inspection on October 19. *See id.* (discussing factors to be considered). The fact that Mr. Curtis did not see any gravel during his inspection "does not remove from the triers of fact the issue of whether the defendant reasonably should have known of the [dangerous condition]." *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 642 (Tenn. 1986). Proof of an inadequate inspection is directly relevant to the question of constructive notice. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997); *see also Hodge*, 2006 WL 36905, at *5 (concluding that direct evidence that a dangerous condition had existed for two weeks before the accident "coupled with [the State inspector's] insistence that he inspected the construction site every day, provides sufficient evidence to support a finding that the gap had been in existence long enough for [the State inspector] to discover and correct it").

## III.

The trial court erred in two critical evidentiary decisions. Expert testimony is not required to determine whether the gravel on the road was from the paving project. And the lay witnesses' opinions as to the source of the gravel are admissible.

Viewing the evidence in the light most favorable to the nonmoving party and giving him the benefit of all reasonable inferences, we conclude that Mr. Flagg came forward with specific facts showing genuine issues for trial. So we reverse the trial court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

15