LAWRENCE COUNTY BANK,
Plaintiff-Appellant,

v.

Terry RIDDLE and Lawrenceburg Power Board, Defendants-Appellees.

Supreme Court of Tennessee.

Oct. 5, 1981.

Jack B. Henry and Joe W. Henry, Jr., Henry & Henry, Pulaski, for plaintiff-appellant.

David D. Peluso, Keaton, Turner & Peluso, Hohenwald, Billy C. Jack, Columbia, for defendants-appellees.

OPINION

JERRY SCOTT, Special Justice.

This is an action for damages allegedly caused by the negligence of the defendants, which resulted in the collapse of a wall and the cracking of another in the plaintiff's partially constructed bank building. The jury rendered a verdict for the plaintiff in the amount of $23,716.98. The Court of Appeals reversed and dismissed the suit.

The facts are relatively simple and straightforward. The plaintiff sought to build an addition to its branch bank in the City of Lawrenceburg. To do so, they employed the plans for the building already in place at the site and decided to build a duplicate of that building adjacent to the existing structure. The only difference between the structures was the addition of a basement under the new building.

The defendant, Terry Riddle, was employed as the general contractor to construct the building. He undertook the task and the construction was proceeding at a normal pace. In order to install electrical service in the new building, it was necessary to lay an underground conduit from a nearby power pole to the bank. Mr. Riddle contacted the defendant, Lawrenceburg Power Board, concerning the coordination of the work. Mr. Riddle's workers were to dig the trench. It was then the Power Board's responsibility to install the electrical conduit in the trench and Mr. Riddle was to refill it.

On Wednesday, May 3, 1978, Mr. Riddle dug the trench 18 inches wide, 24 inches deep, and approximately 90 feet long from the basement of the building in an easterly direction to a point near a utility pole. The eastern terminus of the trench was close to, but not connected with, the drainage ditch beside the street. Later that day, he notified the Board that the trench was ready.

The conduit was not laid and the trench was left open for several days. During the night of Sunday, May 7, and the early morning of Monday, May 8, there was a heavy rain in Lawrenceburg. The trench, like the drainage ditch beside the street, became filled with water. The earth between the terminus of the conduit ditch and the highway drainage ditch collapsed from the water pressure, and a large amount of water flowed into the basement of the bank building, causing the damage.

There was no dispute concerning the facts. Neither defendant presented any proof. The real dispute centered around whether the acts and omissions of the defendants amounted to negligence. The jury found that they did.

The Court of Appeals in reversing and dismissing held that:

There is no other evidence tending to show negligence on the part of defendants. There is absolutely no evidence as to what is good practice on the part of contractors leaving excavated ditches open to expose construction to flooding, nor is there any evidence of the prevailing practice of contractors with reference to providing drainage to prevent flooding of temporary construction excavations, nor is there any evidence of any standard of care of electric utilities in respect to installing cables in open ditches promptly so as to enable refilling of the ditches.

It would not be proper for this Court, and it was not proper for the jury, to determine from the above evidence that the contractor could and should have anticipated that a heavy rain would cause surface water to enter the construction excavation from the trench, should have seen that the trench was refilled before leaving the job for the weekend, or should have provided a relief opening in the construction excavation to prevent accumulation of water therein. Such determination might have been made from testimony of witnesses knowledgeable about recognized careful practices of contractors, but no such testimony was offered and such determination should not be made by speculation of non-experts serving as jurors or judges.

The same should be said about speculation as to the duty of the Power Board to anticipate the occurrence of a heavy rain and to promptly install the conduit for its cable to enable the contractor to refill the trench and avoid flooding.

Under the circumstances of this case, a determination of negligence on the part of the contractor or the Power Board required and requires some testimony of a person or persons, about the knowledge, skills and practices of reasonably careful contractors and Power Boards.

The Court of Appeals further observed that:

There is no reason why the rule employed in medical malpractice cases should not be equally applicable in all cases where the standard of care involved specialized skill or knowledge which is beyond the ken of ordinary laymen.

This Court granted permission to appeal to determine whether expert testimony is required in cases of this nature. We have concluded that it is not.

■ In *Casone v. State*, 193 Tenn. 303, 246 S.W.2d 22, 26 (1952), Justice Burnett taught us when expert testimony is necessary. The subject under examination must be one that requires that the court and jury have the aid of knowledge or experience such as men not specially skilled do not have, and such therefore as cannot be obtained from ordinary witnesses.

■ As the learned text writer points out, "the subject of expertise must be one that would not be comprehensible to jurors without the aid of an expert witness." Paine, *Tennessee Law of Evidence*, § 174. We do not perceive this to be such a case. The digging of ditches and the laying of cables are matters within the ken of ordinary laymen. The vagaries of the weather are matters of great concern and a topic of daily conversation among people generally, regardless of their background, profession, or station in life.

Therefore, we hold that in this case it was not necessary to present expert testimony concerning good practices in the construction and public utilities fields.

The analogy to medical malpractice cases is inappropriate. The inner workings of the human body, surgical procedures, proper diagnostic techniques, and other medical activities are not within the knowledge of average ordinary laymen. The medical terminology employed by doctors is strange and foreign indeed to the average juror, attorney, or judge.

Unlike the medical malpractice field, the digging of an open trench and the consequences of leaving it open for several days is a matter within the knowledge and understanding of ordinary laymen. Most people understand a witness when he refers to a trench, a conduit, electrical lines, and rain. Most people of average intelligence know how water flows and that a ditch facilitates the flow, even though they may not understand all of the natural forces that make it do so.

■ However, the inquiry does not stop there.

Mack Riddle, the President of the plaintiff bank, testified as follows:

Q. Now then, you have, the bank of which you are President has filed suit against Mr. Terry Riddle and against the Electric System and with reference to Terry Riddle, your bank says that it was, he was guilty of negligence in that he didn't take any precaution to safe-guard against damage by water in view of the fact that he caused the ditch to be cut knowing water in large amounts flowed in the drainage ditch. Can you tell us what you have in mind about that, or what you think he did wrong?

A. I think he was wrong. I mean . . . .

OBJECTION: MR. JACK: Judge as to what his opinion is, may it please the Court, . . .

THE COURT: Well, I'm going to let him state what his theory of negligence is. I'm going to let him answer that.

Q. What theory, just using the judge's words, upon what theory of negligence, what theory do you base the allegation of wrong doing on the part of Terry Riddle?

A. And the fact that that ditch was open from Wednesday until, two full working days, until the following Monday, and after that by not being, having the conduit put it, and covered, and two full working days, plus the day it was open.

Q. All right, go ahead.

A. They didn't coordinate their work.

Q. They didn't coordinate their work. By they you mean who, Terry Riddle and . . . ?

A. And the Power System.

Q. All right, then, you say about the Power System, that they had superior knowledge of the fact that there was a drainage ditch there owned by the City, uh, and that, which was a natural flow and carried off large amounts of water, and that it was guilty of negligence in not proceeding forthwith to cause the cable to be laid when it received notice it was open and ready to go. Is that— about them, what do you think they did wrong?

A. By not coming in there and filling it up after they were notified that the ditch was ready for them.

The Court of Appeals held that this testimony was inadmissible for two reasons. First, it was not shown that the witness had personal knowledge of the facts stated. Also, he was not qualified as an expert to state an opinion upon the facts.

While we do not agree that a witness must be an expert to testify regarding the facts of this case, we agree that this witness' testimony should not have been admitted. The bank president, who didn't even remember if he saw the ditch before the damage occurred, was allowed to state his "theory of negligence". This testimony was simply a layman's conclusion as to whether the defendants' conduct amounted to negligence. This was the ultimate issue the jury was required to determine.

In *Cumberland Telegraph & Telephone Company v. Dooley*, 110 Tenn. 104, 72 S.W. 457, 458 (1903), firefighter witnesses were asked whether, with the apparatus there at hand, they could have stopped and controlled the fire they were fighting had an explosion not occurred. They testified that they could. These witnesses were not qualified as experts. This Court noted that there was no indication that these witnesses were possessed of facts not equally within the knowledge of every other spectator at the fire. This amounted to the witnesses giving conjectural or speculative opinions which dogmatically settled an issue the jury was called upon to try. The admission of their testimony was, therefore, reversible error.

The bank president's testimony, like that of the firefighters, was simply his conjectural and speculative opinion as to whether the defendants were guilty of negligence. His "theory of negligence" should not have been submitted to the jury.

In view of the closeness of this case, we cannot say that this testimony did not affect the verdict.

Therefore, the judgment is reversed and the cause is remanded for a new trial.

HARBISON, C. J., and COOPER and FONES, JJ., concur.

BROCK, J., files dissenting opinion.

BROCK, Justice, dissenting.

I respectfully dissent. In my view the verdict is supported by the evidence.

I agree that the court erred in the admission of witness Riddle's opinion testimony relative to the theory of negligence relied upon by the plaintiff in this cause. In my opinion, such testimony was inadmissible, but, I am also of the opinion that the error was harmless. Riddle's testimony in this respect was not factual; it merely stated a lay opinion of negligence. Therefore, I am satisfied it in no way affected the verdict of the jury.