IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2019 Session

## MARTHA L. BUTLER v. JAMES L. BURROW ET AL.

**Appeal from the Chancery Court for Sumner County**
**Nos. 2016-CV-110 and 2016-CV-12      Joe Thompson, Chancellor**

_____

### No. M2018-02283-COA-R3-CV

_____

This appeal arises from an action for trespass, injunctive relief, and to quiet title pursuant to a theory of common law adverse possession. The multiple parties are adjoining neighbors and/or affiliated businesses. The centerpiece of this litigation concerns the ownership of a strip of railroad property that is 66 feet wide and comprises 2.9 acres. The railroad removed the track and abandoned the property in 1977, after which all that remained was a berm on which the former track lay. After the track was removed, one of the neighboring owners erected a fence along the center of the entire length of the railroad property. Since that time, the neighboring property owners considered the fence to be the new property line and used the 33 feet of the property on their side of the fence as their respective property. However, the neighboring property owners never paid taxes on the abandoned railroad property. In 2015, one of the three defendants acquired the abandoned property by quitclaim deed from the railroad and removed the fence and leveled the berm in order to install a road to serve a residential development planned for an adjacent 42-acre tract. Thereafter, the owners of two separate adjoining properties filed suit against the three affiliated defendants seeking an injunction and to recover damages caused by flood water that had been diverted onto the plaintiffs' property due to the removal of the berm. The plaintiffs also asserted claims for trespass and to quiet title to the 33 feet of the former railroad property that adjoined their property. The defendants filed counterclaims alleging that the temporary injunction halted development of the road and caused them to suffer damages. Following a bench trial, the court ruled that the plaintiffs acquired half of the abandoned railroad property through adverse possession. The court also awarded damages against the defendants for removing the fence the plaintiffs used to contain their cattle and for flood damage that resulted from the removal of the berm. The court also ordered the defendants to replace the berm. The defendants appealed. We have determined that Tenn. Code Ann. § 28-2-110(a) bars the plaintiffs' claim of adverse possession because it is undisputed that they did not pay taxes assessed on the railroad property for more than 20 years. Therefore, we reverse the trial court's determination that the plaintiffs own half of the railroad property and hold that the defendant who acquired the property from the railroad by quitclaim deed in 2015 is the

rightful owner of the entire 2.9-acre tract. We also reverse the award of damages to the plaintiffs for replacement of the fence and restoration of the entire berm; however, we affirm the trial court's determination that the defendants are jointly and severally liable for diverting water onto the plaintiffs' property by removing the railroad berm, and remand this claim for the trial court to award damages and/or determine the appropriate measures the defendants should take to remedy the flooding caused by the removal of the berm. Further, the defendants claim for damages resulting from the temporary injunction is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Bruce N. Oldham, Gallatin, Tennessee, for the appellants, James L. Burrow, Clearview Creekbank, L.L.P., and Clearview Farms, L.L.P.

Philip C. Kelly and Gwynn K. Smith, Gallatin, Tennessee, for the appellees, Martha L. Butler, Dennis Lee Clark, and Karen Kae Clark.

**OPINION**

Plaintiff Martha L. Butler ("Mrs. Butler") owns a two-acre tract, and Plaintiffs Dennis and Karen Clark ("the Clarks") own a 10.4-acre tract, both of which are adjacent to the southern boundary of the abandoned railroad property ("the disputed property"). Defendant Clearview Farms, L.L.P. ("Clearview Farms") owns a 42-acre tract that is adjacent to the northern boundary of the disputed property. Thus, the disputed property is contiguous with and runs between Plaintiffs' properties and Clearview Farms' property.

There were initially two defendants in this action, Clearview Creekbank, L.L.P. ("Clearview Creekbank") and its general partner, James L. Burrow ("Mr. Burrow"). When the action was commenced, it was Plaintiffs' understanding that Mr. Burrow owned the 42-acre tract on the northern border of the disputed property and that Clearview Creekbank had recently acquired a quitclaim deed to the disputed property from the railroad. However, as explained later, Plaintiffs discovered that Mr. Burrow quit claimed the 42-acre tract in 2015 to Clearview Farms of which Mr. Burrow is the general partner.

In the initial complaint, Plaintiffs alleged that one of the neighboring property owners erected a fence in 1977 down the center line of the disputed property, and Mrs. Butler and the Clarks each acquired ownership of the half of the disputed property that adjoined their respective properties through common law adverse possession. For her part, Mrs. Butler also alleged Mr. Burrow caused her property to flood by leveling the railroad berm. The Clarks additionally claimed they held a prescriptive easement to a driveway that crossed the disputed property and that they suffered damages due to a deep trench Mr. Burrow carved out that prevented the Clarks' use of the driveway. The Clarks additionally alleged they suffered damages when Mr. Burrow bulldozed the fence that kept their livestock contained for years.

Plaintiffs also requested injunctive relief pertaining to Mr. Burrow's ongoing work to remove the berm and his obstruction of the Clarks' use of their driveway. Prior to Defendants filing their answer, and following a hearing, the court granted a temporary injunction enjoining Mr. Burrow from blocking or impeding the Clarks' driveway. The court also permitted Mr. Burrow to continue his grading work on the disputed property as long as it did not increase flooding on Mrs. Butler's property.

Defendants filed an answer and counter-complaint against the Clarks and Mrs. Butler. According to the counter-complaint, Clearview Creekbank intended to build a road on the property it acquired from the railroad to provide access to a future residential development on the 42-acre tract owned by Clearview Farms. Defendants also sought to recover damages resulting from the temporary injunction that impeded construction of the road on the disputed property.

Shortly thereafter, the court granted Clearview Farms' petition to intervene. In its intervening complaint, Clearview Farms alleged that Plaintiffs caused it to suffer damages by delaying the residential development. Plaintiffs then amended their complaint to add Clearview Farms as a defendant and filed answers to Defendants' counter-complaint and Clearview Farms' intervening complaint. (Hereafter, Clearview Farms, Clearview Creekbank, and Mr. Burrow will be collectively referred to as "Defendants").

The court held a bench trial on October 30, 2017, and November 17, 2017, during which 15 witnesses testified. Testimony and evidence relevant to this appeal established that a railroad company acquired the disputed property in 1890 and used the property until 1977 when the railroad removed the railroad tracks and abandoned the property.

The owners of the neighboring properties in 1977 and throughout the 1980s were: James A. Burrow, the father of defendant James L. Burrow, who owned the 42-acre tract

to the north; F.C. and Laura Butler, the in-laws of Mrs. Butler, who owned the 10.4-acre tract to the south; and Mrs. Butler, who owned the adjoining two-acre tract.[1]

Mrs. Butler testified that Mr. Burrow's father, James A. Burrow, constructed a fence in the early 1980s down the center line of the disputed property. As a consequence, 33 feet of the disputed property was on James A. Burrow's side of the fence, the north side, and 33 feet of the disputed property was on the Butlers' side of the fence, the south side. Mrs. Butler also stated that after the fence was constructed, she and her in-laws treated the fence as the new northern boundary line to their combined 12.4 acres. In 2009, the 10.4-acre tract formerly owned by Mrs. Butler's in-laws was sold to the Clarks. Significantly, during their testimony, Mrs. Butler and Mrs. Clark each conceded that the disputed property was not included in their deeds. They also conceded that they did not pay any taxes assessed on the disputed property.

Plaintiffs' testified that in 2015, after Clearview Creekbank acquired a quitclaim deed to the disputed property, Mr. Burrow blocked the Clarks' driveway that ran across the disputed property. Mrs. Butler testified that the driveway used by the Clarks to access their property had been used as a driveway by her family, continuously and uninterrupted, since 1960. Mrs. Butler testified that Mr. Burrow also "bulldozed" the fence and removed a portion of the railroad berm on the disputed property. And as a consequence, during heavy rains in May and July 2016, water flowed in a north to south direction over the portion of the disputed property where the berm was removed and onto Plaintiffs' property, causing significant flood damage to Mrs. Butler's home and shop. Plaintiffs testified that previous to the removal of the berm, flood water had never flowed in a north to south direction over the disputed property.

Mr. Burrow testified that he helped his father erect the fence on the disputed property in 1978.[2] Mr. Burrow acquired the 42-acre tract formerly owned by his father and subsequently quit claimed the entire tract to Clearview Farms in 2015. That same year, Clearview Creekbank acquired the disputed property from the railroad via quit claim deed. Mr. Burrow, who was the general partner of both businesses, explained that he planned to build a road on the disputed property to serve the residential development he was planning for the Clearview Farms property.

To accomplish this goal, when Clearview Creekbank acquired the disputed property in 2015, Mr. Burrow had the fence removed. Mr. Burrow also testified that he

---

[1] Mrs. Butler and her husband jointly owned the property at that time, but he died prior to the commencement of this litigation. Mrs. Butler has been the sole owner of the property since his passing.

[2] Although the exact year is immaterial, the complaint alleged that the fence was erected in 1977, Mrs. Butler testified that it was erected in the 1980s, and Mr. Burrow said it was erected in 1978.

did not remove a berm on the portion of the disputed property as Plaintiffs claimed because there was no berm on that portion of the property. Mr. Burrow suggested that Plaintiffs' property flooded because Sumner County road crews dug a ditch along East Harris Road that diverted water onto Plaintiffs' property.

As for Defendants' damages claims, Mr. Burrow claimed they were forced to halt construction of the road on the disputed property as a result of the injunction obtained by Plaintiffs, which caused Defendants to suffer significant monetary damages.

After considering all the evidence at trial, the court ruled:

It is uncontroverted that since the early 1980's, the parties held their property adversely to the interests of the railroad, that the interests of the Plaintiffs and the interests of the Defendants to 33 feet of property along the center line of the railroad were held exclusively, actually, adversely, continuously, openly, and notoriously. Thus the Plaintiffs and the Defendants acquired their interests in the [disputed property] by adverse possession. The deed acquired by the Defendants from the railroad was ineffective to convey any property so held by the Plaintiffs.

Similarly, the court credits the testimony of Martha Butler that the driveway used by her in-laws to access their home (now owned by the Clarks) has been in continuous and uninterrupted use since it was acquired by F.C. and Laura Butler in 1960. There was no evidence presented that the railroad or anyone else granted permission for use of this driveway.

The court also awarded monetary judgments against Defendants, jointly and severely, finding that Mrs. Butler was entitled to $8,721.61 for flood damage caused by removal of the berm, the Clarks were entitled to $10,552 for removal of the fence, and Plaintiffs were entitled to $16,473.51 to restore the berm.

Defendants filed a motion to alter or amend contending Plaintiffs' claim of adverse possession was barred by Tenn. Code Ann. § 28-2-110(a) because only the railroad company, not Plaintiffs or their predecessors in interest, paid property taxes on the disputed property for more than 20 years. Plaintiffs responded, arguing, *inter alia*, that Defendants did not prove Plaintiffs' failure to pay taxes for more than 20 years, and even so, § 110(a) did not apply to bar their claim of adverse possession because their claim fit the exception to the statute outlined in *Cumulus Broadcasting, Inc. v. Shim*—the tracts were contiguous, a relatively small area was in dispute, and the adjacent owners claiming an interest in the disputed property paid their respective property taxes. 226 S.W.3d 366, 381 (Tenn. 2007).

The trial court denied Defendants' motion to alter or amend, and this appeal followed.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01.

> The underlying rationale for this mandate is that it facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision," and in the absence of findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision." *In re Estate of Oakley*, No. M2014–00341–COA–R3–CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). Moreover, findings of fact that are both sufficient and supported by the record "enhance the authority of the trial court's decision by providing an explanation of the court's reasoning." *In re Zaylen R.*, No. M2003–00367–COA–R3–JV, 2005 WL 2384703, at *2 (Tenn. Ct. App. Sept. 27, 2005).

*Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015).

If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006).

While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* at 35. "Simply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Gooding*, 477 S.W.3d at 782 (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)).

If the trial court fails to explain the factual basis for its decisions, the appellate court "may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Gooding*, 477 S.W.3d at

783 (citing *Lovlace*, 418 S.W.3d at 36); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ISSUES

The dispositive issues on appeal are (1) whether Tenn. Code Ann. § 28-2-110(a) bars Plaintiffs' claims of adverse possession, (2) whether Defendants and/or Plaintiffs are entitled to damages, and (3) whether Clearview Farms is jointly and severally liable to Mrs. Butler for flood damage.[3]

## ANALYSIS

### I.    TENNESSEE CODE ANNOTATED SECTION 28-2-110

Defendants argue that Plaintiffs claim of adverse possession is barred by Tenn. Code Ann. § 28-2-110(a) because Plaintiffs did not pay taxes on the disputed property for

---

[3] Defendants frame the issues as follows:

1. Whether the trial court erred by finding that [Plaintiffs] acquired the disputed land by adverse possession when such claims were barred by TCA Section 28-2-110(a) for nonpayment of taxes for more than twenty years.
2. Whether the trial court erred by finding that [Plaintiffs] acquired the disputed land by adverse possession in the absence of clear and convincing evidence as to all of the necessary elements.
3. Whether the trial court erred by allowing Plaintiffs to introduce testimony by expert witnesses when [Plaintiffs] had testified during depositions that they had not retained any experts and had not supplemented these responses prior to trial as required by Tenn. R. Civ. P. 26.05.
4. Whether the trial court erred by awarding damages to [Plaintiffs].
5. Whether the trial court erred by awarding a judgment against Clearview Farms in the absence of any evidence that said Defendant had caused any damages to [Plaintiffs]
6. Whether [Defendants] should be awarded damages against [Plaintiffs]
7. Whether CSX Transportation, Inc. should have been joined as an indispensable party because that trial court's decision holding that the parties acquired the [disputed property] by adverse possession affects the covenants and restrictions included in the 2015 deed from CSX Transportation, Inc. to Clearview Creekbank.

Because we have determined that Tenn. Code Ann. § 28-2-110(a) bars Plaintiffs' adverse possession claim, issues 2, 3, and 7 are pretermitted. Defendants did not appeal the trial court's determination that the Clarks acquired a prescriptive easement across the disputed property.

more than 20 years. For their part, although Plaintiffs concede they did not pay property taxes for the disputed property, they contend the exception to the statute articulated by the Tennessee Supreme Court in *Cumulus Broadcasting, Inc. v. Shim* applies in this case. 226 S.W.3d at 381. Because it is undisputed that Plaintiffs did not pay property taxes for the disputed property, the determination of whether the statute bars Plaintiffs' adverse possession claim is a question of law, which we review de novo. *Lind*, 356 S.W.3d at 895.

Tennessee Code Annotated § 28-2-110(a) provides:

Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

In other words, the statute bars any legal or equitable claim to real property if the claimant failed to pay taxes assessed on the property for more than 20 years. However, the Tennessee Supreme Court articulated a narrow exception to this statute in *Cumulus Broadcasting*, 226 S.W.3d at 381. In that case, the disputed property was a relatively slender area of overlap between two adjoining properties—the Shim tract and the Cumulus tract. *Id*. at 370–71. More specifically, portions of a service road on the Cumulus tract overlapped the boundary onto the Shim tract. *Id*. at 372. While the area of overlap was assessed for tax purposes to the Shim tract, the owners of the Cumulus tract claimed they acquired the property through adverse possession. *Id*. at 379.

On appeal to this court, we determined that Tenn. Code Ann. § 28-2-110(a) barred that owner's adverse possession claim because the owner of the Cumulus tract did not pay taxes on the disputed property. *Id*. The Tennessee Supreme Court reversed, holding:

Because tax maps are for the purpose of showing the plats upon which parties have paid taxes rather than establishing boundaries, a "slight overlap" would rarely have any effect on an evaluation for tax purposes. Tennessee Code Annotated section 28-2-110 was enacted in order to facilitate the collection of property taxes based upon property evaluations. The burden of proof requires any party who relies upon the invocation of Tennessee Code Annotated section 28-2-110 to clearly establish the failure to pay taxes by the other party. Because tax maps do not identify precise boundaries and actual boundaries are established by intent, the Defendant Shim cannot prevail. Tennessee Code Annotated section 28-2-110 should

not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making the claims of ownership have paid their respective real estate taxes.

*Id*. at 381.

Unlike *Cumulus Broadcasting*, Plaintiffs' 12.4-acre tract and Clearview Farms' 42-acre tract are not contiguous with one another, such that the disputed property is "an overlap" of one's property on the other's and assessed to one tract or the other for payment of taxes. *See Holtsclaw v. Johnson*, No. E2015-00081-COA-R3-CV, 2015 WL 5684257, at \*7 (Tenn. Ct. App. Sept. 28, 2015). Thus, no portion of Plaintiffs' or Clearview Farms' property overlapped the boundary of the other's tract. Further, the disputed property was separately assessed to the railroad for tax purposes at all times material to this issue, not to Plaintiffs or Clearview Farms. Therefore, the *Cumulus Broadcasting* requirement is not met. *See id*.

We have determined that the facts of this case are similar to *Cass Rye & Associates, Inc. v. Coleman*, wherein we determined that the *Cumulus* exception did not apply because the disputed property was "a separately conveyed parcel distinctly assessed for tax purposes." No. M2011-01738-COA-R3-CV, 2012 WL 4044862, at \*8 (Tenn. Ct. App. Sept. 13, 2012). It is undisputed that prior to 2015, the railroad was the record owner of the disputed property, and the property taxes were assessed to and paid by the railroad during the alleged period of adverse possession by Plaintiffs. It is also undisputed that neither Plaintiffs nor their predecessors in interest were ever the record owners of any portion of the disputed property and taxes on the disputed property were never assessed to Plaintiffs or to their predecessors in interest. Additionally, Mrs. Butler and Mrs. Clark both testified that they did not pay any property taxes assessed on the disputed property.

To further support their claim that the statutory bar applied, Defendants submitted a Certificate of Attorney's Opinion prepared by Attorney Russell Brown of Benchmark Title Company showing that the railroad, and not Plaintiffs or their predecessors in interest, actually payed the property taxes assessed on the disputed property for more than 20 years. Plaintiffs argue that the title opinion is not competent to prove that the railroad paid the taxes. However, Plaintiffs never objected to the admission of this evidence; therefore, the issue is waived. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.")[4]

---

[4] The title opinion was entered into evidence at the injunction hearing without objection. At trial, the attorneys for Plaintiffs and Defendants requested that the court review all of the exhibits presented at

(continued…)

Because Defendants clearly established that neither Plaintiffs nor their predecessors in interest paid taxes on the disputed property for more than 20 years, Tenn. Code Ann. § 28-2-110(a) bars Plaintiffs' claim through adverse possession. *See Cumulus Broadcasting*, 226 S.W.3d at 381. ("The burden of proof requires any party who relies upon the invocation of Tennessee Code Annotated section 28-2-110 to clearly establish the failure to pay taxes by the other party.")

## II.     DAMAGES

After finding that Plaintiffs owned half of the disputed property, the trial court denied Defendants' claim for damages and awarded damages to Plaintiffs. Based on its determination that it would cost $16,473.51 to restore the berm, the court awarded that amount to Plaintiffs. The court also awarded $10,552 to the Clarks as the cost to replace the fence that was removed from the center of the disputed property. Because we have determined that Clearview Creekbank owns all of the disputed property, we reverse the trial court's judgment awarding damages of $16,473.51 to Plaintiffs to restore the berm and $10,552 to the Clarks as the cost to replace the fence.

However, Mrs. Butler's claim of trespass resulting from flood damage caused by the removal or leveling of a portion of the berm is not barred based on the fact that Clearview Creekbank is the rightful owner of the disputed property. This is because the diversion of water onto the property of another is a trespass, entitling the aggrieved party to nominal and all consequential damages. *See Ray v. Neff*, No. M2016-02217-COA-R3-CV, 2018 WL 3493158, at *8 (Tenn. Ct. App. Jul. 20, 2018); *see also Perlaky v. Chapin*, No. E2017-01995-COA-R3-CV, 2018 WL 3603004, at *2 (Tenn. Ct. App. Jul. 27, 2018) ("Every trespass gives the aggrieved party the right to nominal and all consequential damages.")

The trial court awarded $8,721.61 to Mrs. Butler in damages for trespass resulting from Defendants' diversion of water onto her property. In making its determination, the trial court relied on Plaintiffs' testimony that Mr. Burrow removed or lowered the berm and Plaintiffs' observations during various flooding events as well as photographs of the flooding which supported their testimony. Defendants contend, however, that the evidence preponderates in favor of the finding that Mr. Burrow did not remove or level the berm and that the actions of others caused the flooding. Defendants further contend the trial court erred in basing its trespass ruling on lay testimony. They contend expert testimony was required to determine the cause of the flooding. Specifically, Defendants

---

the injunction hearing when making its final decision, and thereafter, the title opinion and 12 other exhibits were entered into evidence without objection.

rely on the fact the county widened the ditches on East Harris Road and Mr. Clark performed grading work on the disputed property.

Contrary to Defendants' assertions, expert testimony on causation is not necessary in every trespass action. *Ray*, 2018 WL 3493158, at *10. Such proof is only required when causation cannot be determined "on the basis of deductions made and inferences drawn from ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life." *Id*. (quoting *Lawrence County Bank v. Riddle*, 621 S.W.2d 735, 737 (Tenn. 1981)).

For example, in *Chambers v. Illinois Central Railroad Company*, the plaintiffs claimed that their property flooded due to a blockage in a culvert owned and maintained by the defendant. No. W2013-02671-COA-R3-CV, 2015 WL 2105537, at *1 (Tenn. Ct. App. May 5, 2015). The culvert was constructed to channel water into a drainage ditch running parallel to the plaintiffs' property. *Id*. We explained that "[m]ost people of average intelligence know how water flows and that a ditch facilitates the flow, even though they may not understand all of the natural forces that make it do so." *Id*. at *8 (quoting *Lawrence County Bank*, 621 S.W.2d at 737). Thus, we determined that the "question of whether the culvert was clogged and, if so, whether the clogging caused water to be unable to get through the culvert and the ditch, does not require expert testimony; it is a conclusion that can be reached on the basis of the testimony of lay witnesses." *Id*.

Conversely, in *Ray v. Neff*, the plaintiffs claimed that the diversion of water onto the plaintiffs' property was caused solely by the installation of a pipe on the defendants' property. 2018 WL 3493158, at *10. But, a paving company modified the defendants' property in ways that could also have contributed to the flooding. *Id*. Thus, to determine the cause, the trial court had to "separate the effects resulting solely from the pipe from the effects that also resulted from the work done by [the paving company]." *Id*. Because the court could not make this determination based on ordinary knowledge, common sense, and practical experience, expert proof was needed. *Id*.

Here, and as was the case in *Chambers*, causation hinged on what direction the water flowed and the basic mechanisms directing that flow, which could be determined by applying ordinary knowledge, common sense, and practical experience to lay witness observations and photographic evidence. Therefore, expert testimony was not necessary to prove the cause of the flooding.

Mrs. Butler testified that she witnessed Mr. Burrow leveling the berm on the disputed property. She also testified that she lived on her two-acre tract south of the disputed property for 47 years, and the land sloped downward from north to south. As for the railroad berm, she could not "say in feet how high it was, but if you parked a vehicle on it, it would sit at an angle." Mrs. Butler explained that her property was south of the

- 11 -

disputed property, which was located in the back of her home at the northern boundary of her property, and there was a creek in front of her home to the south. Mrs. Butler explained that during heavy rains prior to the removal or leveling of the berm, the water would rise in the creek in front of her home but it never came from a north to south direction (from the back), and it never flooded her home or shop. Mrs. Butler testified that even during the 100-year flood in May 2010, the water in the creek reached the edge of her home in front but did not get inside her home, and no water flowed from north to south off the disputed property in the back of her home.

Mrs. Butler further testified that when it rained in May and July 2016, she observed a substantial amount of water flowing onto her property from the 42-acre tract to the north through the area where Mr. Burrow leveled the berm and into the back of her residence and shop causing significant damage. According to Mrs. Butler, in the 47 years she lived on her property, she never witnessed flood water flowing from north to south until Mr. Burrow removed the berm. Mrs. Butler also presented several photographs taken during the May and July floods. The photographs clearly show the water flowing from north to south over the disputed property where Mrs. Butler alleged the berm was removed. In some of the photographs, East Harris Road is also visible, and there is no water flowing off that road.

Mrs. Clark, who along with her husband purchased their 10.4 acres from Mrs. Butler in 2009, presented photographs showing the portion of the berm on the disputed property that Mr. Burrow had not leveled, which corroborated Mrs. Butler's testimony about the berm height. She also testified that after Mr. Burrow removed the berm, the flood water flowed in a north to south direction through the area where Mr. Burrow removed the berm and onto Plaintiffs' property. Mrs. Clark said that prior to the removal of the berm, the water never flowed in a north to south direction onto their property; instead, the water came from the creek in front of their home. Mrs. Clark also presented a number of photographs showing the water flowing from north to south over the area where the berm was allegedly removed.

Mr. Clark's testimony was consistent with that of Mrs. Clark and Mrs. Butler. He testified that during the flood in May 2010, water rose in the creek in front of their home and reached their doorstep but did not get inside. However, during the floods in May and July 2016, the flood water flowed from north to south in back of their home and not from the creek. He conceded that he did some grading work on a small portion of the disputed property to partially fill in the deep trench Mr. Burrow dug across their driveway in order to get his cattle trailer out. Significantly, however, Mr. Clark testified that this grading work was done after the May 2016 flood.

Defendants presented testimony from James David West, a neighbor who lived on East Harris Road about a half a mile from Clearview Farms. Mr. West testified that "somewhere around May" of 2016, the county dug a ditch line along East Harris Road,

which filled with water and backed up during the first heavy rains. He also testified that sometime thereafter, the county put in a pipe to divert the water, and since that time, he had not noticed any water build-up in that area. Mr. West presented photographs of the ditch line; however, the photographs were not taken during any of the floods. Moreover, Mr. West did not testify about any observations regarding the diversion of water onto Plaintiffs' or Defendants' property from East Harris Road.

Ronnie Thompson, an employee of the Sumner County Highway Department, testified about the work the county performed on East Harris Road. He testified that the county dug a ditch line along East Harris Road, but he did not remember when the county did so. He also testified that the water backed up in the ditches with heavy rains, which led the county to install a cross tile to divert the water.

Mr. Burrow testified that he did not remove the berm on the disputed property because there was no berm there. Instead, he added 12 inches of dirt to the disputed property to cover toxic cinder ash. Mr. Burrow also testified that during the May and July floods, he observed the flow of water as "[i]t came out of the ditch line of East Harris Road across over the edge of Clearview Farms, LLP, then crossed into the [disputed property], then from there was discharged down upon parcel 16.1 of James R. and Martha Butler in the flood plain, in the 100-year flood plain." However, Mr. Burrow presented no photographic evidence to support his contention that the water came out of the ditch line of East Harris Road.

Melody Pruitt, a limited partner in Clearview Farms and Clearview Creekbank testified that there was never a berm on the portion of the disputed property as Plaintiffs' claimed. She testified that Mr. Burrow added soil to that portion of the property to cover cinder ash. Mrs. Pruitt also testified that, during the May 2016 flood, the water came from the creek in front of Mrs. Butler's home but during the July floods, the water flowed off East Harris Road.

After hearing all of the testimony and considering the evidence, the trial court credited Plaintiffs' testimony and photographic evidence over the testimony of Defendants' witnesses. Based on Plaintiffs' testimony and photographic evidence, the trial court found there was a berm on the disputed property, Mr. Burrow removed the berm and, thereafter, flood waters flowed freely in a north to south direction over the disputed property where the berm was removed and onto Plaintiffs' property. The trial court also determined that the removal of the berm diverted the flow of water and caused the flood damage on Mrs. Butler's property. We find that the evidence preponderates in favor of the trial court's determination that by leveling the berm on the disputed property, Defendants diverted water onto Plaintiffs' property causing significant flooding. Accordingly, we affirm the trial court's ruling that Defendants are liable for trespass on Plaintiffs' property and the judgment in favor of Mrs. Butler for $8,721.61 in flood damages.

As for the trial court's determination that it would cost Plaintiffs $16,473.51 to restore the berm, which award we have reversed, the ruling was based on the determination that Plaintiffs' owned the southern half of the berm. Because we have ruled that Plaintiffs do not own any portion of the disputed property, they cannot "restore the berm." Therefore, it becomes Defendants' responsibility to take the requisite remedial action or pay additional damages if the requisite remedial action is not taken. Accordingly, we remand this issue to the trial court to determine what actions Defendants should take, if any, to remedy the diversion of water caused by the removal or leveling of all or a portion of the berm, whether to award Plaintiffs additional damages should it become necessary for Plaintiffs to take other or additional remedial measures to remedy the tortious diversion of water onto their property, and whether to award Plaintiffs additional damages until the problem is remedied.

Because Clearview Creekbank owns all of the disputed property, Defendants are entitled to a hearing to determine what, if any, damages they are entitled to recover resulting from the halt of construction of the road due to the injunction. Accordingly, this claim is remanded to the trial court for further proceedings consistent with this opinion.

### III. JOINT AND SEVERAL LIABILITY

The trial court found Defendants jointly and severally liable for trespass upon and flood damages to Mrs. Butler's property. Defendants argue that Clearview Farms cannot be held liable because Clearview Farms did not take any action on the disputed property to remove the berm. Plaintiffs contend that because Mr. Burrow is the general partner of both Clearview Farms and Clearview Creekbank, and because Mr. Burrow's actions in removing the berm were in service to both entities, Clearview Farms is also liable.

Despite adopting principals of comparative fault in Tennessee, the Tennessee Supreme Court did not abolish joint and several liability as it applies to tortfeasors who act in concert. *Resolution Trust Corp. v. Block*, 924 S.W.2d 354, 356 (Tenn. 1996). The Tennessee Supreme Court explained:

> Where two or more persons act in concert, it is well settled both in criminal and in civil cases that each will be liable for the entire result . . . . In legal contemplation, there is a joint enterprise, and a mutual agency, so that the act of one is the act of all, and liability for all that is done is visited upon each.

*Id*. (quoting *Prosser and Keeton on Torts*, § 52, p. 346 (W. Page Keeton ed.) (5th ed. 1984)).

The testimony and evidence at trial revealed that Mr. Burrow was the general partner of both defendant limited liability partnerships—Clearview Creekbank and Clearview Farms. Clearview Creekbank was the record owner of the disputed property, and Clearview Farms was the record owner of the 42-acre tract adjoining the disputed property to the north. Mr. Burrow testified that he planned to create a residential development on the Clearview Farms property, and the construction of a road on the Clearview Creekbank property was essential to the success of the Clearview Farms development. Because the grading work performed on the disputed property was in service to a joint enterprise, and the work was performed by Mr. Burrow as the agent of both entities, we affirm the trial court's decision to hold Clearview Farms jointly and severally liable with Clearview Creekbank and Mr. Burrow.

## IN CONCLUSION

Therefore, we hold that Clearview Creekbank is the rightful owner of all of the disputed property and reverse the award of damages to Plaintiffs to replace the fence and restore the berm on the disputed property. We affirm the award of $8,721.61 to Mrs. Butler for trespass damages caused by the diversion of water and the finding that Defendants are jointly and severally liable for the damages. We remand to the trial court the issue concerning what actions Defendants should take, if any, to remedy the diversion of water caused by the removal of all or a portion of the berm; whether to award Plaintiffs additional damages should it become necessary for Plaintiffs to take other or additional measures to remedy the tortious diversion of water onto their property; and whether to award Plaintiffs additional damages until the problem is remedied. Further, Defendants' claim for damages resulting from the halt of construction of the road due to the injunction is remanded for further proceedings consistent with this opinion. One-half of the costs of appeal are assessed against Plaintiffs, jointly and severally, and one-half of the costs of appeal are assessed against Defendants, jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 15 -